UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

JOHN T. BELL,

    Plaintiff,                                                    Case No.: 07 CV 7086 DARRAH/KEYS

v.

COMTRUST, INC.,

    Defendant.
_____/

**DEFENDANT'S COUNTERPETITION TO VACATE OR,
ALTERNATIVELY, TO MODIFY, THE ARBITRATION AWARD**

Pursuant to §10(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. §10(a), Defendant ComTrust, Inc. ("ComTrust") respectfully petitions this Court for an order vacating a December 10, 2007 Arbitration Award (the "Award") entered by the National Futures Association ("NFA") arbitration panel in the matter captioned *Bell v. Alaron Trading Corp., et al.*; NFA Case No. 06-ARB-61, insofar as it imposes any liability upon ComTrust.[1]  Alternatively, pursuant to § 11 of the FAA, 9 U.S.C. §11, ComTrust requests that the Court enter an order modifying or correcting the Award with respect to ComTrust.

**INTRODUCTION**

This is a case where the arbitration panel, in breach of the parties' arbitration agreement, automatically, and without any evidentiary support, made the Futures Commission Merchant ("FCM") ComTrust liable for the alleged fraudulent activities of independent introducing brokers ("IIBs") who serviced Plaintiff's commodity trading account.  Under the NFA rules, which were expressly incorporated into Plaintiff's arbitration agreement, ComTrust could <u>not</u> be

---

[1] Since the Award is very recent and the effect on its future business or current customers is, at this time, unknown, ComTrust reserves the right to amend this Petition to the extent further grounds for vacatur arise.

1

liable for the actions of Plaintiff's IIBs absent a necessary showing that the IIBs were ComTrust's agents within the NFA's understood meaning of agency.

Throughout the arbitral proceedings, Plaintiff made no plausible showing of direct wrongdoing by ComTrust, and there was no meaningful testimony or other evidence that could possibly support an agency relationship. Moreover, the Panel, by the face of its Award, did not even consider or decide the agency issue. Under the circumstances, the arbitration panel exceeded its authority under the parties' arbitration agreement. This constitutes grounds for the Court to vacate the Award. Alternatively, ComTrust petitions the Court to modify the Award, as there was an evident material miscalculation of figures and the arbitration panel awarded upon matters not submitted to it.

## PARTIES

1. Upon information and belief, Plaintiff is a citizen and resident of the state of Illinois.

2. ComTrust is a Florida corporation with its principal place of business located in Aventura, Florida.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter because there is complete diversity of citizenship between the adverse parties and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs, based upon amounts sought in Plaintiff's demand for arbitration and in the amount awarded in arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

4. In May 2006, Plaintiff initiated an NFA arbitration claim directed at the alleged sales practices of Plaintiff's broker, Mitch Goldberg ("Goldberg"). Specifically, Plaintiff sued Goldberg, the two independent introducing brokers Goldberg had worked for, ProTrade and Corporate Commodities (the "IIBs"), and two FCMs, Alaron Trading and ComTrust. Plaintiff asked for nearly $800,000 in supposed out of pocket losses, about $575,000 of which allegedly represented "commissions and fees."

5. At the time Plaintiff opened his commodity trading account, he entered into an Account Agreement with ComTrust (among other clearing FCMs Plaintiff had accounts with), which contained an agreement to arbitrate any claims in connection with his commodity trading account. At the time Plaintiff submitted his demand for arbitration before the NFA, he expressly agreed that the arbitration proceedings would be controlled by the "rules and bylaws of NFA." Plaintiff's submission to NFA became a material part of the parties' agreement to arbitrate.

6. Plaintiff's original Statement of Claim alleged supposed violations of the "Commodity Exchange Act 7 U.S.C. 1 et al.," and the "Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2 et seq.," among other theories.

7. Plaintiff subsequently moved for leave to file an amended Statement of Claim, which the NFA granted.

8. Plaintiff filed his Amended Statement of Claim in September 2006, wherein he alleged five counts: 1) breach of Plaintiff's customer agreement; 2) breach of fiduciary duty; 3) negligent misrepresentation; 4) negligence/failure to supervise; and 5) fraud. Plaintiff's

---

[2] ComTrust reserves the right to supplement this Petition with supporting documentation of relevant materials and authorities.

Amended Statement of Claim <u>did not</u> allege a violation of any particular section of the Commodity Exchange Act ("CEA"), and made no mention at all of Illinois' fraud statute.

9. The final hearing was held before the panel in October 2007. The witnesses who testified were: Plaintiff, who admittedly had severe memory loss and could remember nothing meaningful; Plaintiff's daughter, who had limited or no direct knowledge of any of the transactions allegedly at issue; Plaintiff's expert, who testified exclusively about the supposed unsuitability of the commodity transactions at issue for Plaintiff; a principal of ComTrust; and a principal of the other FCM, Alaron.

10. With respect to the trades cleared through ComTrust, it was undisputed that the IIBs made all the trade recommendations, had all meaningful communications with Plaintiff, and received all of the commissions. ComTrust only received a relatively small per-trade clearing fee, a substantial portion of which went toward the costs of the transaction.

11. ComTrust's account agreement further made clear that ComTrust's sole responsibility to Plaintiff were the execution, clearing and accounting of his transactions. Thus, the allegations of wrongdoing that formed the basis for each of Plaintiff's claims were directed at the actions of the IIBs. Plaintiff's claim against ComTrust, therefore, depended entirely on whether the IIBs were agents of ComTrust.

12. The NFA guidelines governing the arbitration, which were made a material part of the parties' agreement to arbitrate, expressly provide that an FCM <u>cannot</u> be automatically liable for the actions of an IIB, especially where the FCM and IIB are separate, independent companies. To show such an agency relationship, there must be evidence that the FCM provided meaningful operational or financial support to the IIB so that the IIB could legitimately be called

a "*de facto* branch office of the FCM." Mere "back office" support to IIB, common to virtually all FCM / IIB relationships, is not sufficient to establish an agency relationship.

13. The evidence presented to the panel showed that ComTrust was a separate business entity from the IIBs. ComTrust had no officers, directors or employees in common with the IIBs. ComTrust had no ownership interest in the IIBs. And, ComTrust did not engage in any activities beyond the normal functions an FCM provides to an IIB, such as: collecting commissions and passing them on to the IIBs; ensuring that trades placed in customer accounts were properly executed, and providing customers with accurate trade confirmations and account statements. Likewise, Plaintiff came forward with no evidence that ComTrust provided any financial support of any kind to the IIBs, or that it provided any operational assistance to the IIBs.

14. Nor was any evidence presented indicating that ComTrust had any ability to hire or fire employees of the IIBs, supervise the IIBs or their employees, or receive any part of the IIBs' commissions, or otherwise share in the IIBs' revenue.

15. Also, Plaintiff produced no evidence that ComTrust ever authorized the IIBs to hold themselves out as agents of ComTrust or that the IIBs ever did hold themselves out as agents of ComTrust, beyond the mere fact that they provided customers with ComTrust's account opening documents.

16. The testimony at the final hearing further established that: 1) Plaintiff had no reason to believe the IIBs were agents of ComTrust (Plaintiff had no recollection of ever thinking this); and 2) ComTrust and the IIBs were wholly separate companies. In fact, the account-opening agreement executed by Plaintiff at the time he opened his account expressly disavowed any responsibility by ComTrust for the IIBs' sales practices or other actions:

5

> [i]n the event that this is an Introduced Account from an Independent Introducing Broker, Customer agrees that ComTrust is not responsible or liable whatsoever for any matters relating to sales practices, trading practices, errors in order entry or any similar or other matters, it being expressly understood, agreed and acknowledged by Customer that <u>ComTrust's sole responsibilities hereunder relate to the execution, clearing, accounting and confirmation of transactions for the account of the Customer on various exchanges in accordance with the instructions received by ComTrust from the Independent Introducing Broker for and on behalf of Customer in accordance with usual and customary practices</u>. Customer agrees to refrain from bringing any action or counterclaim against ComTrust and will assert any such claim against only the Independent Introducing Broker (or, where applicable, the non-employee commodity pool operator or commodity trading advisor) for any redress with respect to any matter other than ComTrust's gross negligence or willful misconduct in executing, clearing and/or accounting of transactions for the account of Customer. I AGREE NOT TO COMMENCE ANY LEGAL OR ADMINISTRATIVE PROCEEDING AGAINST COMTRUST UNTIL ANY DEFICIT BALANCE IN THE ACCOUNT(S) IS SATISFIED.

17. Following the final hearing, the panel issued its written Award, identifying the particular issues it considered and decided:

> [t]he following issues were presented to and decided by the undersigned arbitrators: Breach of Contract, Breach of Fiduciary Duty, Negligent Misrepresentation, Failure to Supervise, Fraud, Violations of the CEA 7 U.S.C. Section 1, et al., Violation of NFA Compliance Rules 2-2 and 2-4, Violation of Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2 . . . [and] Plaintiff's request for punitive damages, interest, costs and attorneys fees . . . .

The panel found Goldberg (who defaulted), the IIBs, and ComTrust "jointly and severally liable" for an award of "compensatory damages" in the amount of $594,292.[3] The amount of compensatory damages approximates the alleged amount of commissions and fees charged almost entirely by the IIBs to Plaintiff's trading account. Plaintiff received no other relief.

---

[3] The other FCM Respondent, Alaron Trading, was dismissed.

## GROUNDS FOR VACATUR

18. Section 10(a) of the FAA, 9 U.S.C. §10(a), declares that a federal district court may enter an order vacating an arbitration award:

1) where the award was procured by corruption, fraud or undue means;

2) where there was evident partiality or corruption in the arbitrators, or either of them;

3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject-matter submitted was not made.

*See* 9 U.S.C. §10(a).

19. Additionally, § 11 of the FAA, 9 U.S.C. §11, provides that a federal district court may enter an order modifying or correcting an arbitration award:

a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

b) where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

c) where the award is imperfect in matter of form not affecting the merits of the controversy.

*See* 9 U.S.C. §11.

20. For the reasons explained below, the Award should be vacated because the arbitration panel exceeded its powers by going beyond the parameters of the arbitration contract entered into by the parties. Alternatively, the Award should at least be modified to accurately

reflect Plaintiff's maximum damages from ComTrust's clearing activities, which amounts to $45,600 after accounting for the clearing fees paid by ComTrust.

**I.     The Award Should be Vacated With Respect to ComTrust.**

   *A.     The Arbitration Panel Did Not Consider Agency.*

   21.     The Seventh Circuit Court of Appeal has held vacatur appropriate where the arbitrators "violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc." *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 269 (7th Cir. 2006) (emphasis added). An arbitration panel exceeds its powers when it openly <u>ignores</u> the terms of the arbitration agreement governing the proceedings. *Id.* (stating that when an arbitration panel fails to interpret the terms of a contract, it has exceeded the authority granted to it by the parties); *First Commercial Fin. Group v. Baghdoian*¸ 812 F. Supp. 837, 839 (N.D. Ill. 1993) (stating that when an arbitration panel exceeds its powers by ignoring, rather than misinterpreting, a contract). An award entered by an arbitration panel that has exceeded its authority is subject to vacatur pursuant to 9 U.S.C. §10(a)(4).

   22.     In the agreement to arbitrate, Plaintiff agreed to "submit [his claims] to arbitration in accordance with the Bylaws and Rules of NFA." The panel was thus bound by these terms and was required to apply the rules and regulations promulgated by the NFA, including NFA's Legal and Procedural Guide for NFA Arbitrators (the "Procedural Guide"), in reaching its decision.

   23.     Relying on the arbitration agreement, ComTrust proceeded to the final hearing with the expectation that it could <u>only</u> be found liable if Plaintiff satisfied at least one of the three specific grounds set forth by NFA for imposing liability on an FCM, which are:

   a.     ComTrust engaged in wrongful conduct in connection with Plaintiff's account;

8

      b.      ComTrust acted as a guarantor FCM for ProTrade or Corporate Commodities pursuant to a written guarantee agreement that was in effect during the time Plaintiff maintained his account; or

      c.      ComTrust was involved in a principal-agent relationship with ProTrade or Corporate Commodities.

*See* NFA's Procedural Guide at 15-16. ComTrust relied on its agreement that it could not be found liable for the losses sustained by Plaintiff if none of these circumstances were present.

24. The Award contains a specific list of the matters the panel identified as having considered and decided: "Breach of Contract, Breach of Fiduciary Duty, Negligent Misrepresentation, Failure to Supervise, Fraud, Violations of the CEA, 7 U.S.C. § 1, *et al.*, Violation of NFA Compliance Rules 2-2 and 2-4 [and] Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2." Since there was no claim or evidence of direct wrongdoing by ComTrust in relation to ComTrust's limited duty of clearing trades, and all alleged wrongdoing went specifically to the actions of the IIBs, the only basis under which ComTrust could <u>possibly</u> be held liable was under a principal/agent theory. The panel expressly <u>did not</u> consider or decide agency.

25. By holding ComTrust liable for Plaintiff's losses on grounds <u>other</u> than those specifically enumerated in NFA's Procedural Guide, the panel exceeded the authority it was given pursuant to the arbitration agreement. This alone constitutes grounds for vacating the Award.

      **B.**      ***The Arbitration Panel Further Had No Evidentiary Basis for Holding ComTrust Liable for Plaintiff's Losses.***

26. There further exists no evidentiary basis for imposing liability against ComTrust.

27. Plaintiff has not charged ComTrust with any wrongful conduct, nor did the evidence indicate, let alone support, a claim for wrongdoing on the part of ComTrust.

28. It is also beyond question that ComTrust did not act as a guarantor FCM for the IIBs during the time period Plaintiff maintained his account.

29. The only theory that could have made ComTrust jointly and severally liable for the damages suffered by Plaintiff is a principal/agent claim. NFA's Procedural Guide, however, makes clear that an FCM such as ComTrust may only be responsible for the actions of an independent introducing broker if it can be shown that the independent introducing broker is a *de facto* branch office of the FCM. *See* NFA's Procedural Guide at 15.

30. NFA's Procedural Guide further explains:

> "[A]n agency relationship is not established if the IB and the FCM work as 'independent business entities' and the only services the FCM provides to the IB are 'back office' services (e.g. calculating margin and net equity and collecting margin) and sending confirmation, purchase and sale, and monthly statements directly to the customers that had been "introduced" by the IIB to the carrying FCM."

*Id.* at 16 (citing *Reed v. Sage Group, Inc.*, 1986 WL 65815, at *5-6 (C.F.T.C.)).

31. Moreover, "an entity is considered autonomous – and thus not an agent – even if it: (1) supplies the FCM's account-opening documents to customers; (2) explains how to complete the account-opening documents; (3) collects account-opening documents and sets up an account at the FCM for the customers; (4) represents that its trades would be through the FCM; and (5) the FCM benefits from its relationship with the introducing entity." *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp., Inc.*, 2006 WL 1789018 at *21 (S.D. Fla. May 30, 2006).

32. The analysis relied upon by the Court in *Gibraltar* comes directly out of a CFTC opinion, *Reed v. Sage, Inc.*, [1987–1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 23,943 (CFTC October 14, 1987) (emphasis added):

> [i]n examining the relationship between a [FCM] and an [IB] to determine whether an agency relationship exists, a factfinder must be cognizant of Congress' understanding that "a significant number of 'agents' of [FCMs] are, in fact, independent businesses that utilize the services of [FCMs] for clearing and recordkeeping functions and for safeguarding of investors' funds." S. Rep. No. 884, 97th Cong., 2d Sess. 41 (1982). Thus, those factors that have historically been present in almost every relationship between a futures commission merchant and its "agent" <u>will not be sufficient to establish that an introducing broker is the agent of an FCM</u>.

33.     The CFTC went on to explain:

> agents have carried all of their accounts on a fully-disclosed basis with an FCM which provided "back office" services for those accounts and as such, was responsible for compliance with the minimum financial, recordkeeping, and reporting requirements established by the Commission and its predecessors agency, the Commodity Exchange Authority ("CEA"). The FCM also provided confirmation, purchase and sale, and monthly statements (as well as any cash remittances) directly to the customers which had been "introduced" by the agent to the carrying FCM. Generally, the agent was compensated by the FCM on a per-trade basis – *i.e.*, the agent would in some manner be allocated a percentage of the commissions charged by the FCM on the trades made by the agent's customers.

34.     According to *Reed*, and the controlling NFA authority, "[w]hen <u>only</u> these factors are present… then the facts and circumstances <u>do not</u> establish an agency relationship." (emphasis added).

35.     The *Gibraltar* court, relying on *Reed* and other CFTC opinions, examined the three forms and agency relationship can take: 1) an <u>express</u> agency relationship, where the parties formally agree to the creation of agency relationship; 2) an "implied actual agency" relationship, where the principal acquiesces to let the other party hold itself out as its agent, the principal provides "substantial support" to the agent, and the principal controls the agent's activities; and 3) "implied apparent authority," where third-parties are reasonably led to believe there is an agency relationship. *Gibraltar*, 2006 WL 1789018 at *20-22.

36.     There was no evidence in this case of an express agency relationship.

37. As to the second possibility, and given the NFA's controlling exclusion of an FCM's normal "back-office" functions from the equation, there was no evidence of an implied actual agency relationship. The evidence before the panel showed ComTrust never agreed to allow the IIBs to hold themselves out as ComTrust's agents. ComTrust indisputably gave the IIBs in this case no financial or operational support of any kind. And, as a separate company with no ownership, officer, or director interest in the IIBs, and solely a contractual relationship that, the evidence will show, put all supervisory and compliance responsibilities on the IIBs themselves – it was uncontradicted that ComTrust had no control over the IIBs.

38. In addition, there could be no "implied apparent authority." The evidence will show Plaintiff offered no testimony that he reasonably believed the IIBs were acting as agents for ComTrust. Indeed, Plaintiff's testimony revealed that he believed exactly the opposite: that ComTrust was not responsible for his losses. Moreover, Plaintiff's account agreement expressly disavowed any possible belief Plaintiff might reasonably have had that ComTrust was responsible as a principal for the IIBs' actions.

39. Accordingly, there was no evidence to support Plaintiff's burden under the arbitration agreement to show, by way of an agency relationship, that the IIBs were "de facto branch offices" of ComTrust.

40. In this regard, the First Circuit has recognized, specifically with respect to the issue of agency, that an absence of meaningful evidence supporting an arbitrators' decision is grounds for vacatur. In *Labor Relations Div. of Const. Industries of Mass., Inc. v. Teamsters Local 379*, 156 F.3d 13, 20-21 (1st Cir. 1998), the court vacated an arbitration award based on agency where the arbitrator "reached conclusions which were entirely unsupported by the testimony in this case," where "there was simply no evidence to support the arbitrator's

conclusion that [the alleged agents] were subject to constant supervision," and where the arbitrator "failed to recognize the significance of certain evidence supporting independent [] status of [the alleged agent," and where the arbitrator failed to factor "[u]ncontradicted evidence" into his analysis. Notably, the Seventh Circuit in *Wise* recognized *Labor Relations* as the type of "no evidence" case that could support vacatur under the statutory grounds of exceeding authority or corrupt motive. *See Wise*, 450 F.3d at 269.

41. In this case, given that a finding of agency was a fundamental requirement under the parties' arbitration agreement, ComTrust satisfies the exceeding authority section of the FAA.

**II. Alternatively, the Award Against ComTrust Should be Modified.**

42. The Award should be modified because there is an evident miscalculation in the amount of the joint and several liability imposed upon ComTrust and because the panel awarded upon matters not submitted to it. 9 U.S.C. §11(a) and (b).

43. The $575,000 in compensatory damages awarded by the panel approximate the total the commissions and fees paid by Plaintiff in connection with his commodity trading account. In fact, ComTrust only received a $17.00 clearing fee for each trade placed by Plaintiff, for a total of about $96,900. After paying clearing fees, ComTrust received a net total of $45,600 on the approximately 5,700 contracts traded by Plaintiff.

44. Given that ComTrust made no trade recommendations did not participate in any of the alleged fraudulent communications with Plaintiff, and all of the remaining commissions generated by Plaintiff's trading went to the introducing brokers (which set their own commission rates), the clearing fees paid to ComTrust represent the maximum damages attributable to ComTrust's activities as an FCM. Yet, the Award purports to hold ComTrust liable – jointly and

13

severally with the introducing broker firms and the broker who serviced Plaintiff's account – for the entire $575,000 in commissions and fees generated from Plaintiff's account, virtually all of which went to the introducing broker firms.

45.     The only theory that could possibly make ComTrust jointly and severally liable for the commissions and fees paid to the IIBs (or any other out-of-pocket damages suffered by Plaintiff as a result of the IIBs alleged wrongdoing) is a principal-agent theory.  Indeed, a prevailing theory of agency was necessary for ComTrust to be liable for any claims asserted by Plaintiff because all of the supposed fraud and negligence occurred with the introducing broker firms.

46.     The existence of an agency relationship between ComTrust and the introducing broker firms, however, was not automatic.  As explained above, NFA's Procedural Guide, which governs this arbitration and were a material part of the parties' agreement to arbitrate, clearly states that an FCM like ComTrust can only be responsible for introduced accounts "if it can be shown that an introducing broker is a *de facto* branch office of an FCM."  *See* Procedural Guide at 15-16.

47.     The authority underlying these bases for holding an FCM liable in connection with introduced accounts was briefed by the Parties.  As explained above, however, the face of the Award confirms that the panel did not consider the matter of agency – an issue that the controlling NFA guidelines specifically state cannot be assumed and must be examined on a case-by-case basis.  *Id.* at 15-16.

48.     Accordingly, the Award should be modified to exclude, or at least limit, the joint and several award against ComTrust to accurately reflect the maximum damages that Plaintiff

could possibly be entitled to from ComTrust's clearing activities: about $96,900, which amounts to $45,600 after accounting for the clearing fees paid by ComTrust. 9 U.S.C. §11(a).

49.　　Further, the panel awarded upon matters not submitted to it.

50.　　As noted above, the Award specifically identifies Violations of the CEA, 7 U.S.C. § 1, *et al.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

51.　　These claims are listed in Plaintiff's initial statement of claim, filed in May 2006, under the section entitled "Violations." Plaintiff abandoned these specific claims in his amended statement of claim, filed in September 2006.

52.　　It is well-settled that an amended complaint supersedes the prior pleading in all respects, such that the "prior pleading is in effect <u>withdrawn</u> as to all matters not restated in the amended pleading, and becomes *functus officio*." *E.g., Duda v. Board of Educ. of Franklin Park Public School Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citations omitted) (emphasis added); *ABN AMRO, Inc. v. Capital Intern. Ltd.*, 2007 WL 845046 at *13 (N.D. Ill. Mar 16, 2007) ("when a litigant files an amended complaint or counterclaim, the allegations in the prior pleading are superseded and are no longer operative, even in the case where the initial filing occurred"). The NFA rule on amended pleadings, § 6(k) of the NFA Arbitration Code, says nothing to the contrary.

53.　　When Plaintiff's Amended Statement of Claim dropped the alleged claims under the Commodity Exchange Act ("CEA") and the Illinois' fraud statute, those claims were <u>withdrawn</u> from the arbitration, and thus <u>should not</u> have been considered or decided in the case, as the Award indicates. The panel, therefore, concededly "awarded upon" matters not submitted

to it. Accordingly, the Award must be modified to remove any consideration or finding of purported violations of the CEA or Illinois' fraud statute, 815 ILCS 505/2. 9 U.S.C. § 11(b).

**WHEREFORE**, ComTrust respectfully requests that the Court enter an order vacating the Award with respect to ComTrust, or alternatively modifying the Award with respect to ComTrust to reflect the maximum amount that ComTrust received from the trades placed by Plaintiff, and granting any other or additional relief the Court deems just and proper.

Respectfully submitted:

*/s/ Gary Sinclair (by JFW)*
GARY M. SINCLAIR

Gary M. Sinclair
Attorney for Respondent ComTrust
2043 N. Mohawk Street
Chicago, IL 60614
Tel: 773-871-4389
Fax: 773-871-8534
E mail: gary@garyslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused to be served a true and correct copy of the foregoing document via this Court's electronic filing system and facsimile upon Howard B. Prossnitz, Esq., Law Offices of Howard Prossnitz, 200 W. Madison Street, Suite 2670 Chicago, Illinois 60606 on this 9th day of January 2008.

*/s/ Gary Sinclair (by JFW)*
GARY M. SINCLAIR