# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHN T. BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 CV 7086 |
| | ) | |
| COMTRUST, INC. | ) | Judge Darrah |
| | ) | |
| Defendant. | ) | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S COUNTERPETITION TO VACATE OR MODIFY THE ARBITRATION AWARD

In its Counterpetition filed on January 9, 2008, Defendant Comtrust, Inc.

("Comtrust") requests that this Court vacate the Arbitration Award ("Award"; attached as

Exhibit A) entered by the National Futures Association ("NFA") arbitration panel ("the

Panel") on December 10, 2007 in the matter of Bell v. Alaron Trading Corp., et al., NFA

Case No. 06-ARB-61.  Plaintiff respectfully requests that this court deny Defendant's

request, affirm the Panel's Award and enter judgment thereon.

### INTRODUCTION

Plaintiff John Bell is 81 years old and suffers from significant memory loss.

Between June 16, 2005 and February 6, 2006, Mr. Bell's broker, Mitch Goldberg,

recklessly traded away $793,595 of Mr. Bell's retirement money through massive

positions and margin calls, trades which were unsuitable for a retired novice investor

such as Mr. Bell.  For example, even though the account was opened with only $27,000,

the margin calls made on the account totaled $767,120.  As a result of these actions,

Goldberg and his former employers, the Introducing Brokers ("IBs") Protrade Futures

1

and Options, Inc. and Corporate Commodities, Inc., have all been permanently barred from the industry. *See* NFA Case No. 06-BCC-022.

As the Futures Commissions Merchant ("FCM") for Mr. Bell, Comtrust entered into a Commodity Customer Agreement with him, dated June 13, 2005. Paragraph 2 of the Agreement states, in pertinent part:

> "All transactions for my [Bell's] account(s) shall be subject to the regulations of all applicable federal, state and self-regulatory agencies including the constitution, rules and customs, as the same may be constituted from time to time, of the exchanges, market or place (and the clearing associations, if any) where executed or, if different, your [Comtrust's] house rules."

This provision was breached in numerous ways. For example, the NFA BCC case cited above found that Goldberg violated NFA Rule 2-2(a) (fraud), Rule 2-9(a) (negligent supervision), Rule 2-29(a)(1) (fraudulent communications with the public), and Rule 2-29(a)(2) (use of high-pressure sales tactics).

Comtrust was vicariously liable for the acts of the IBs under agency law. According to the NFA Guide for Arbitrators, Legal and Procedural Issues, "Section 2(a)(1) of the Commodity Exchange Act provides respondeat superior and general principal/agent standards for imposing liability on employers and principals for the acts of their employees or agents...The fact that an IB is "independent" does not mean that it cannot be held to be an agent of an FCM." (p. 15). At the very least, Comtrust should have been aware of the "red flags" of fraud on Mr. Bell's account. Comtrust claimed to know little about their IB, Protrade, despite the fact that Protrade's office was only fifty feet away from Comtrust's. Also, as a small FCM who would be potentially liable for the margin calls if they were not collected, Comtrust should have been concerned with the $767,120 of margin calls made on Mr. Bell's account. Comtrust should have noticed that

Mr. Bell, a retiree with no commodities experience, was taking huge positions and repeated large margin calls. Finally, Comtrust should have been concerned with the fact that the advisor to Mr. Bell's account was Goldberg, who at the time had been banned from the industry for four years. Yet, Comtrust conducted no inquiry after seeing these "red flags", turning a blind eye to the problems with Mr. Bell's account.

After two lengthy days of arbitration, Comtrust raised a Motion for Directed Verdict. After hearing oral argument as well as reviewing post-hearing briefs from both sides, the Panel denied the motion. Thereafter the Panel found Comtrust, along with Goldberg, Protrade, and Corporate Commodities, jointly and severally liable to Mr. Bell for $594,292. *See* Exhibit A, ¶ 4. Subsequently, on December 28, 2007, Comtrust petitioned the Panel for Modification of Award pursuant to Section 10(c) of the NFA Code of Arbitration. (Attached as Exhibit B). On January 3, 2008, the NFA rejected the motion, saying that "it is not based on any of the grounds for a modification request under Section 10(c) of the Code of Arbitration." *See* NFA letter attached as Exhibit C.

Meanwhile, on December 5, 2007 the NFA's Business Conduct Committee instituted an action against Comtrust seeking to fine or suspend the company for the same egregious conduct as Mr. Bell experienced. This conduct included deceptive and misleading sales solicitations, use of deceptive or misleading promotional material, allowing an unregistered individual to act in a capacity requiring registration, failing to supervise their employees, and failing to uphold just and equitable principles of trade. *See* NFA Complaint, NFA Case No. 07-BCC-047. Additionally, the NFA sent a Notice of Suspension to Comtrust on January 11, 2008, for failing to pay the award in the <u>Bell</u> arbitration. (Attached as Exhibit D).

**ARGUMENT**

**I.**      <u>**The Panel's Award Could Only Be Modified In Rare Circumstances.**</u>

The Seventh Circuit has consistently held that arbitration awards may be modified only in rare circumstances. In fact, "[t]he chances for a successful appeal of an arbitration award are not particularly good." <u>Chameleon Dental Products, Inc. v. Jackson</u>, 925 F.3d 223, 225 (7th Cir. 1991) (refusing to vacate an NFA arbitration award for a "trivial departure" from the arbitration agreement). The sole power of a court to modify an arbitration award comes from Sections 10 and 11 of the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq. See* <u>Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis</u>, 849 F.2d 264, 267 (7th Cir. 1988) (citations omitted). Section 10(a) allows a federal district court to vacate an arbitration award only:

1)      where the award was procured by corruption, fraud, or undue means;

2)      where there was evident partiality or corruption in the arbitrators;

3)      where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4)      the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

*See* 9 U.S.C. § 10(a). In the alternative, Section 11 allows a district court to modify or correct an award only:

a)      where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

4

b)     where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

c)     where the award is imperfect in matter of form not affecting the merits of the controversy.

*See* 9 U.S.C. § 11.

The Seventh Circuit has enforced this limited rule. *See* National Wrecking Co. v. International Brotherhood of Teamsters, Local 731, 990 F.2d 957, 960 (7th Cir. 1993); Eljer Mfg., Inc. v. Kowin Development Corp., 14 F.3d 1250, 1253, n. 4 (7th Cir. 1994).

In this case, it is important to note that Comtrust has not alleged fraud, corruption, or misbehavior on the part of the arbitrators. Therefore, it would seem that Comtrust is attempting to vacate the award by showing an excess of arbitrator power or imperfect execution of those powers, in violation of Section 10(a)(4). Comtrust, however, cannot meet its burden of proving such a violation.

**II.     The Award Against Comtrust Should Not Be Vacated.**

**A.     The Arbitration Panel Considered Agency.**

Defendant claims the Panel "openly ignore[d] the terms of the arbitration agreement governing the proceedings." Defendant's Counterpetition, ¶ 21 (citations omitted). According to the Defendant, the Panel was "bound" to apply the "rules and regulations" contained in the Legal and Procedural Guide for NFA Arbitrators ("the Guide"). Id. at ¶ 22. Defendant further alleges that ComTrust could "only" be liable under agency theory, which they claim the Panel "did not consider or decide." Id. at ¶ 24.

This argument is completely unsupported by the facts and borders on the frivolous. To begin with, Defendant's characterization of the Guide is incorrect. As its

name would imply, the Guide is simply a guide to arbitrators to assist them in deciding cases. The Guide was not promulgated to be a set of rules or by-laws to which prospective panels must adhere. In fact, the Guide itself says so: "*It should be noted at the outset that these summaries are not all-inclusive. Rather, they are intended as an overview of those legal and procedural issues that frequently arise in NFA arbitration proceedings. Moreover, these summaries are in no way intended as a substitute for the parties' own legal research and analysis.*" *See* NFA's Guide at 1 (emphasis in original). With such a disclaimer, it was irresponsible for Comtrust to argue that the Guide constituted NFA by-laws or regulations.

Comtrust's contention that the Panel did not consider agency theory is also incorrect. Comtrust alleges that agency theory was not considered since it was not mentioned by the Panel as an issue decided in reaching the award. However, the issues mentioned by the Panel were all of the counts alleged by Mr. Bell, and the "agency theory" was not a count; rather, it was an underlying premise and allegation contained within Bell's causes of action. For example, under Claimant's Count of Breach of Fiduciary Duty against Comtrust, Plaintiff alleged "A principal-agent relationship with Claimant developed with Respondents whereby Respondents owed the utmost in fiduciary duties to Claimant." Similar language can be found in Claimant's Counts of Negligent Misrepresentation, Negligence – Failure to Supervise, and Fraud. Further, the Panel had no duty to issue any written legal explanation of its Award. *See* Eljer Mfg., Inc. v. Kowin Development Corp., 14 F.3d 1250, 1255 (7th Cir. 1994).

**B.     The Arbitration Panel Had Ample Evidentiary Basis For Holding Comtrust Liable.**

Defendant is incorrect in alleging that there was no evidentiary basis for holding Comtrust liable for two reasons. First, the liability of an FCM is not limited to instances when the IB is a *de facto* branch office of the FCM, as Comtrust alleges. The Guide that Comtrust cites for this preposition is not an exclusive treatise on liability. The Panel had the ultimate discretion, after hearing days of testimony and argument, as well as studying the post-argument briefs, as to whether Comtrust was liable for the acts of its IB.

The Panel's finding of liability was not contrary to the facts presented. As mentioned in the Guide, the arbitrator must look at all of the facts to determine whether there exists an agency relationship. *See* NFA's Guide at 15. In this case, Comtrust had signed agreements with both Protrade and Corporate Commodities. These agreements underscore many of the facts tending to show an agency relationship between the parties. Comtrust required each IB to furnish it all of the details of the IB's clients, including name, age, address, net worth, previous investment experience, etc. Also, Comtrust required the IBs to communicate to the customer any margin calls and inform the customer of Comtrust's margin policies. Further, Comtrust required the IB to use only documents approved by Comtrust, as well as to abide by Comtrust's rules and procedures. These are just some of the facts which, when taken with the entirety of the circumstances, including the fact that Comtrust was located fifty feet away from the IB's office, allowed the Panel to rule that Comtrust was the principal of Protrade and Corporate Commodities.

Second, even if the Panel incorrectly applied the law of agency to an FCM (which Plaintiff vehemently denies), Defendant's petition must also be denied because errors of law alone do not constitute a sufficient basis for vacating the award. Eljer Mfg., Inc. v.

Kowin Development Corp., 14 F.3d 1250, 1255 (7th Cir. 1994). The court's holding in that case is very analogous to the present case: "In its brief, [Comtrust] goes to great lengths in trying to persuade us that various legal defenses it presented to the arbitrator should have prevailed. [Comtrust] misses the point. Even if its legal defenses were dispositive, *the fact that the arbitrator erroneously rejected them does not, by itself, provide grounds for a remand.* The arbitrator must have deliberately disregarded what he knew to be the law. *[Comtrust] has not shown such disregard here.*" Id. (emphasis added). Further, Section 10(a) of the Federal Arbitration Act, the exclusive source of jurisdiction for vacating an arbitration award, does not allow an award to be vacated for an alleged incorrect interpretation of the law.

Comtrust is bringing this action to delay judgment against it and to attempt to secure a new hearing on the merits of the case. To allow it to do so would be to fly in the face of the very purpose of arbitration hearings. Arbitration is "a private system of justice offering benefits of reduced delay and expense." Eljer Mfg., Inc v. Kowin Development Corp., 14 F.3d at 1252. Arbitration "does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review." National Wrecking Co. v. International Brotherhood of Teamsters, Local 731, 990 F.2d 957, 960 (7th Cir. 1993). It is clear, both from the facts of the present case and the relevant case law, that Comtrust cannot vacate the award entered against it.

## III.    The Award Against Comtrust Should Not Be Modified.

Comtrust argues in the alternative that the award should be modified under Section 11 of the Federal Arbitration Act. According to it, the Panel did not have the authority to enter an Award of $594,292 when Comtrust received approximately $96,000

from Mr. Bell in fees. *See* Defendant's Counterpetition at ¶ 43-45. However, the amount

Comtrust received has no bearing upon Plaintiff's damages. Plaintiff lost close to

$800,000. $594,292 was a reasonable damage award.

As already noted, arbitration panels have great discretion in determining the

amount of an award. In fact, a Panel does not even have to state the reasons for its

decision, because such a requirement would serve only to perpetuate the delay and

expense which arbitration is meant to combat. Eljer Mfg., Inc. v. Kowin Development

Corp., 14 F.3d at 1254 (citing Randall v. Lodge No. 1076, Int'l Ass'n of Machinists and

Aerospace Workers, 648 F.2d 462, 268 (7th Cir. 1981) ). Quite simply, it was within the

Panel's discretion to hold Comtrust jointly and severally liable for the entire award after

it had found (with a substantial evidentiary basis) that Comtrust breached its duty to Mr.

Bell. Comtrust is asking this Court to second-guess the Panel's judgment in determining

damages, a request which is contrary to the great deference awarded arbitrators.

Additionally, it is significant that Defendant is seeking a modification of the

award under Section 11 of the Federal Arbitration Act. Section 11 is *identical* to NFA

Code of Arbitration Section 10(c), which sets forth the only grounds upon which a party

may request that an arbitration award be modified. On December 28, 2007, Comtrust

petitioned the Panel to modify the award pursuant to NFA Code Section 10(c). The NFA

rejected the request, saying "it is not based on any of the grounds for a modification

request under Section 10(c) of the Code of Arbitration." *See* Exhibit C. Comtrust is

merely asking this Court to give Comtrust the result it wants, despite the fact that the

Panel made the final decision on this matter.

## CONCLUSION

Defendant has not met its burden of proving that the arbitration award must be vacated or modified. Arbitration awards can only be vacated or modified on very limited grounds, and an arbitrator is given great deference in determining any award. Contrary to Defendant's belief, the Panel was not obligated to follow any "rules" or "by-laws" supposedly present in the Legal and Procedural Guide for NFA Arbitrators. The Panel did, in fact, consider agency theory in reaching its result, because an agency relationship was a critical component of many of Mr. Bell's claims. There was a substantial evidentiary basis for the Panel's decision that Protrade and Corporate Commodities were agents of Comtrust. Even if the Panel's ruling was based on an incorrect interpretation of the law, that fact, by itself, does not warrant the modification of the award. Finally, it was within the discretion of the Panel to hold Comtrust jointly and severally liable for the entire judgment awarded to Mr. Bell.

WHEREFORE, Plaintiff John T. Bell respectfully requests that the Court deny Defendant's petition to vacate or modify the award, affirm the award entered by the Panel, and grant any other or additional relief that this Court deems just and proper.

Respectfully submitted,

Plaintiff John Bell


By: _____

Howard B. Prossnitz, Esq.
Law Offices of Howard Prossnitz
Suite 2670
200 West Madison Street
Chicago, Illinois 60606
(312) 960-1800
(312) 960-1804 (fax)
howard@prossnitzlaw.com
Dated: January 11, 2008

James L. Kopecky, P.C.
312 North Clark Street
Suite 2200
Chicago, IL 60610
(312) 527-3966
(312) 527-3968 (fax)
jim@jlkopecky.com


<u>Certificate of Service</u>

      I, Howard Prossnitz, an attorney, served a copy of the foregoing on the following attorneys electronically and by fax on this 11th day of January, 2008:

      Andrew States, Esq.
      Suite 1631
      111 West Washington
      Chicago, IL 60602
      fax: (312) 201-9233

      Gary Sinclair, Esq.
      2043 N. Mohawk
      Chicago, IL 60614
      fax: (773) 871-4389



## NATIONAL FUTURES ASSOCIATION

In the Matter of the Arbitration Between )
)
John T. Bell, )
                              Claimant, )
)                              **AWARD**
                    v. )
)
Alaron Trading Corporation, )
Comtrust, Inc., Protrade Futures & Options, )
Corporate Commodities, Inc, and )
Mitchell Goldberg, )
                              Respondents. )

Re:   06-ARB-61

The following issues were presented to and decided by the undersigned arbitrators: Breach of Contract, Breach of Fiduciary Duty, Negligent Misrepresentation, Failure to Supervise, Fraud, Violations of the CEA 7 U.S.C. Section 1, et al., Violation of NFA Compliance Rules 2-2 and 2-4, Violation of Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2, Claimant's Motion for Default against Mitchell Brad Goldberg, Protrade Futures & Options, and Corporate Commodities, Inc., Claimant's request for punitive damages, interest, costs and attorney's fees, Alaron Trading Corporation's Motion for Summary Judgment against John T. Bell, and Respondents' request for costs and attorney's fees.

At the end of the Claimant's case in chief, Respondents Alaron Trading Corporation and Comtrust, Inc. each raised Motions for Directed Verdict. After hearing oral argument and reviewing post hearing briefs from the Claimant and Respondents, the Panel hereby grants the Motion with respect to Alaron Trading Corporation only. Therefore, John Bell's claims against Alaron Trading Corporation are denied and dismissed with prejudice.

We, being the arbitrators appointed to review and determine this matter in accordance with the Code of Arbitration of National Futures Association deny Alaron Trading Corporation's Motion for Summary Judgment and grant Claimant's Motion for Default. We hereby determine that the following relief shall be granted.

Comtrust, Inc., Corporate Commodities, Inc, Protrade Futures & Options, and Mitchell Goldberg are jointly and severally liable for the following award and shall pay to John T. Bell:

| | | |
|---|---|---|
| Compensatory Damages | $ | 594,292.00 |
| Punitive Damages | $ | 0.00 |
| Treble Damages | $ | 0.00 |
| Interest | $ | 0.00 |
| Attorney's Fees | $ | 0.00 |
| Other Costs | $ | 0.00 |
| Total Amount of Award | $ | 594,292.00 |

Exhibit A

All other relief requested is hereby denied, and each party shall bear its own costs and fees as incurred.


_____          Date:  <u>December 10, 2007</u>
Daniel Formeller, Chairman


_____          Date:  <u>December 10, 2007</u>
Mark I. Dunaevsky, Arbitrator


_____          Date:  <u>December 10, 2007</u>
Timothy J. Lankford, Arbitrator

**BEFORE THE**
**NATIONAL FUTURES ASSOCIATION**

JOHN T. BELL,

      Claimant,

vs.                                                    NFA Case No. 06-ARB-61

ALARON TRADING CORPORATION, et al.

      Respondents.

_____/

## RESPONDENT COMTRUST'S PETITION FOR MODIFICATION OF AWARD

Pursuant to § 10(c) of the National Futures Association's ("NFA") Code of Arbitration, Respondent Comtrust, Inc. ("Comtrust") respectfully requests that the Arbitration Panel (the "Panel") appointed to determine the above-captioned matter modify the Award issued on December 10, 2007 (the "Award," Ex. A hereto). First, the compensatory damages awarded "joint and severally" against Comtrust to Claimant John Bell ("Claimant") represents, on the face of the Award, an evident miscalculation of damages. Second, the Panel decided issues not properly submitted to it in arbitration. Under these circumstances, a modified Award under § 10(c) is necessary.

### BACKGROUND

Claimant brought an NFA Arbitration Claim in May 2006 directed at the alleged sales practices of Claimant's broker, Mitch Goldberg. *See* NFA Arbitration Claim, Ex. B hereto. Claimant sued Goldberg, the two introducing brokers Goldberg worked for, ProTrade and Corporate Commodities (the "IBs"), and the FCMs that cleared the trades, Alaron Trading and Comtrust. Claimant asked for nearly $800,000 in supposed out of pocket losses, about $575,000 of which allegedly represented "commissions and fees." In the original Claim, Claimant alleged

1

Exhibit B

supposed violations of the "Commodity Exchange Act 7 U.S.C. 1 et al.," and the "Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2 et seq.," among other theories. *Id.*

In September 2006, Claimant moved for leave to file an amended Statement of Claim, which NFA granted. The amended Statement of Claim, Ex. C hereto, alleged five counts: breach of Claimant's customer agreement, breach of fiduciary duty, negligent misrepresentation, negligence/failure to supervise, and fraud. The amended statement of Claim alleged no particular claim under any section of the Commodity Exchange Act ("CEA") or Illinois' fraud statute.

It was undisputed throughout the arbitration that the IBs made all the trade recommendations and received all the commissions (with only a relatively low per trade clearing fee charged by Comtrust). The claim against Comtrust thus depended entirely on the contention that the IBs were Comtrust's agents, a contention Comtrust vigorously contested.

Following a final hearing and written closing arguments from the parties, the Panel issued its written Award. The Panel identified the issues it considered and decided, writing in pertinent part:

> The following issues were presented to and decided by the undersigned arbitrators: Breach of Contract, Breach of Fiduciary Duty, Negligent Misrepresentation, Failure to Supervise, Fraud, Violations of the CEA 7 U.S.C. Section 1, et al., Violation of NFA Compliance Rules 2-2 and 2-4, Violation of Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2 . . . [and] Claimant's request for punitive damages, interest, costs and attorneys fees . . . .

*See* Ex. A hereto. The Panel then found Mitch Goldberg (who defaulted), the IBs, and Comtrust "jointly and severally liable" for an award of "compensatory damages" in the amount of

$594,292.[1]    Claimant received no other relief.    The amount of compensatory damages approximates the alleged amount of commissions and fees charged almost entirely by the IBs to Claimant's trading account.

For the reasons explained below, Comtrust respectfully requests that the portion of the Award making it jointly and severally liable with the IBs for compensatory damages be modified.

## ARGUMENT

Section 10(c) of the NFA Code of Arbitration sets forth specific grounds upon which a party may request that an arbitration award be modified.    Specifically, § 10(c) states:

> [t]he award may be modified by the Panel if a party submits a written request for modification which is received by NFA within 20 days from the date of service of the award on the parties, and the Panel deems modification necessary because:
>
> (1)    there is an evident miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;
>
> (2)    the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or
>
> (3)    the award is imperfect in matter of form not affecting the merits of the controversy.

In this case, the award must be modified because there is an evident miscalculation in the joint and several award against Comtrust and because the Panel has awarded upon matters not submitted to it.

## I.    The Award Miscalculates Damages Against Comtrust.

The compensatory damages Award approximates Claimant's commissions and fees.    In fact, Comtrust received only a $17.00 per trade clearing fee from Claimant's trading – roughly

---

[1] The other FCM Respondent, Alaron Trading, was dismissed.

$96,900.00 total from all of Claimant's trading. Comtrust, after paying clearing fees, netted only $45,600.00 on the approximately 5,700 contracts traded. Since Comtrust made no trade recommendations, had none of the alleged fraudulent communications with Claimant, and all the commissions and remaining fees went to the IBs (who set their own commission rates), Comtrust's clearing fees represent Claimant's maximum damages proximately related to Comtrust's alleged activities as a clearing firm. Yet, the Award makes Comtrust liable, jointly and severally with the IBs and their AP, for the apparent total amount commissions and fees from Claimant's trading – nearly $600,000, virtually all of which went to the IBs. This in itself is a miscalculation of damages against Comtrust.

The only theory that could have made Comtrust jointly and severally liable for commissions and fees paid to the IBs (or any other out of pocket damages Claimant suffered as a result of the IBs' alleged actions) is a principal/agent claim. However, no theory of agency is included among the matters the Panel identified in the Award as having considered and decided. *See* Ex A hereto (identifying "Breach of Contract, Breach of Fiduciary Duty, Negligent Misrepresentation, Failure to Supervise, Fraud, Violations of the CEA 7 U.S.C. Section 1, et al., Violation of NFA Compliance Rules 2-2 and 2-4, [and] Violation of Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2").

This is not a trivial omission in the Award. A prevailing theory of agency was necessary to every claim alleged against Comtrust, since all the alleged fraud and negligence occurred with the IBs. Nor was a finding of agency between Comtrust and the IBs automatic. To the contrary, the NFA guidelines for arbitrators, which control this arbitration and are a material part of the

parties' agreement to arbitrate, *see* Ex. B,[2] make clear that a clearing firm like Comtrust can only

be responsible for introduced accounts "if it can be shown that an IB is a de facto branch office

of and FCM." Legal and Procedural Issues For NFA Arbitrators at 15-16, "Clearing Firm

Responsibility For Introduced Accounts." These guidelines explain,

> For example, an agency relationship is not established if the IB
> and the FCM work as "independent business entities" and the only
> services the FCM provides to the IB are "back office" services (e.g.,
> calculating margin and net equity and collecting margin) and sending
> confirmations, purchase and sale, and monthly statements directly to the
> customers that had been 'introduced' by the IB to the carrying FCM.

*Id.* The authority behind these principles was briefed by the parties. Moreover, the evidence

was overwhelmingly one-sided that Comtrust's relationship with the IBs in this case was nothing

more than a generic FCM / IB relationship involving separate businesses. There was no

evidence suggesting anything like the "de facto branch office" relationship required for agency.

Accordingly, the Panel's Award in this case has not, on its face, considered the matter of

agency, and agency cannot be assumed consistent with controlling NFA guidelines. The award

thus should be modified under § 10(c), NFA Arbitration Code, to exclude, or at least limit, the

joint and several award against Comtrust to reflect accurately Claimant's <u>maximum</u> damages

from Comtrust's clearing activities – about $$96,900.00 in fees, or $45,600.00 after Comtrust

paid its clearing fees. As it stands, the joint and several award against Comtrust for nearly

$600,000 is a miscalculation evident from the Award itself.

## II.   The Panel Decided Claims Claimant Withdrew.

The award identifies among the matters the Panel considered and decided alleged

"Violations of the CEA 7 U.S.C. Section 1, et al., . . . [and the] Illinois Consumer Fraud and

---

[2] In Claimant's arbitration agreement, Claimant expressly agrees to submit his claim to
arbitration in the NFA "in accordance with the Bylaws and Rules of the NFA." Ex. B at 7.

Deceptive Business Practices Act 815 ILCS 505/2." Ex. A hereto. These supposed statutory claims appeared in Claimant's initial May 2006 claim under the alleged "Violations" section. *See* Ex. B hereto. However, the September 2006 Amended Statement of Claim dropped these supposed claims entirely. *See* Ex. C hereto. Claimant said nothing during the rest of the arbitration about the Illinois statute, and included only brief references to two CEA provisions in its written closing argument, purportedly in relation to its breach of contract claim.

It is well settled that an amended complaint supersedes the prior pleading in all respects, so that the "prior pleading is in effect <u>withdrawn</u> as to all matters not restated in the amended pleading, and becomes functus officio." *E.g., Duda v. Board of Educ. of Franklin Park Public School Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citations omitted) (emphasis added); *ABN AMRO, Inc. v. Capital Intern. Ltd.*, 2007 WL 845046 at *13 (N.D. Ill. Mar 16, 2007) (finding that "when a litigant files an amended complaint or counterclaim, the allegations in the prior pleading are superseded and are no longer operative, even in the case where the initial filing occurred"). The NFA rule on amended pleadings, § 6(k), NFA Arbitration Code, says nothing to the contrary.

Thus, when Claimant's Amended Statement of Claim dropped the alleged claims under the "CEA 7 U.S.C. § 1, et al.," and under Illinois' fraud statute, those claims were <u>withdrawn</u> from the arbitration. Those claims should <u>not</u> have been considered or decided in the case, as the Award indicates. The Panel therefore has "awarded upon" matters not submitted to them. For this reason as well, the award must be modified under § 10(c), NFA Code of Arbitration Procedure, to remove any consideration or finding of purported violations of the CEA or Illinois' fraud statute, 815 ILCS 505/2.

6

**WHEREFORE**, Respondent Comtrust respectfully requests that the Arbitration Panel appointed to determine the above-captioned matter modify the Award issued on December 10, 2007 to reduce the amount of the joint and several Award against Comtrust to, at <u>most</u>, the amount Comtrust received in fees from Claimant's trading, about $96,900.00; and netting $45,600.00 after paying clearing fees, and further to modify the Award to remove any finding of a violation of the CEA or Illinois' fraud statute, 815 ILCS 505/2, which were not submitted in arbitration, and any amount of damages awarded on such a finding.

Respectfully submitted:

Gary M. Sinclair, Attorney for
Respondent Comtrust

Gary M. Sinclair
Attorney for Respondent Comtrust
2043 N. Mohawk Street
Chicago, IL 60614
Tel: 773-871-4389
Fax: 773-871-8534
E mail: gary@garyslaw.com

 NATIONAL FUTURES ASSOCIATION

January 3, 2008

<u>VIA FASCIMILE & US MAIL</u>

Mr. Gary Sinclair
Attorney at Law
2043 N. Mohawk Street
Chicago, Illinois  60614

Re:  <u>06-ARB-61</u> – <u>Bell v. Protrade Futures & Options, et al.</u>

Dear Mr. Sinclair:

      NFA has received Comtrust Inc.'s Motion for Modification of Award in this case.  We are rejecting the Motion because it is not based on any of the grounds for a modification request under Section 10(c) of the Code of Arbitration.

      If you have any questions, please contact me at (312) 781-1481.

Very truly yours,

Heather Cook
Senior Case Analyst

cc:   Howard Prossnitz, Esq.
      Andrew David, Esq.
      Mitchell Goldberg
      Michelle LaBruce

Exhibit C



BEFORE THE
NATIONAL FUTURES ASSOCIATION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| Comtrust, Inc. | ) | Case No. 06-ARB-61 |
| (NFA ID #0346967) | ) | |

### NOTICE AND ORDER OF SUSPENSION OF
### MEMBERSHIP PURSUANT TO NFA CODE OF ARBITRATION SECTION 10(g)

National Futures Association ("NFA") hereby notifies Comtrust Inc. ("Comtrust") that the President of NFA has determined that Comtrust should be summarily suspended from NFA Membership pursuant to NFA Code of Arbitration Section 10(g) due to its failure to pay the Award in the NFA arbitration proceeding captioned, <u>Bell v. Comtrust, Inc., et al.</u>, Case Number <u>06-ARB-61</u>.

On December 10, 2007, NFA served the Award on Comtrust, Inc. On January 10, 2008, NFA was informed that the Award has not been paid.

The suspension shall become effective thirty (30) days from the date of this Notice and Order unless NFA receives evidence that Comtrust has satisfied the Award, posted a bond in accordance with Section 10(g) of the Code or complied with other terms in lieu of the bond that are acceptable to the Claimant in this matter. The suspension will remain in effect until NFA receives evidence that Comtrust has either satisfied the Award, posted a bond in accordance with Section 10(g) of the code or complied with other terms in lieu of the bond that are acceptable to the Claimant. This evidence should be addressed to:

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois 60606
Attn: Arbitration Department

Exhibit D

-2-

Be advised that NFA Compliance Rule 2-6 prohibits a Member from conducting futures-related business with a suspended Member or Associate Member of NFA and prohibits the suspended Member or Associate Member from holding himself out as a Member or Associate Member in good standing.

Date:  January 11, 2008           By: _____

Daniel J. Roth, President