Defendant's
Exhibit B

# COM*TRUST*

**CUSTOMER ACCOUNT APPLICATION AND AGREEMENT**

# NEW ACCOUNT INSTRUCTIONS

## FOLLOW THESE SIMPLE INSTRUCTIONS TO OPEN
## AN INDIVIDUAL OR JOINT ACCOUNT WITH COMTRUST

**Page 1**     **Regulation 155 Risk Disclosure Statement..................... (Requires Signature)**
Please read carefully and sign.

**Page 2**     **Option Disclosure Statement .......................................... (Requires Signature)**

**Please sign after carefully reading pages 3 - 10.**

**Page 11**     **Individual Information Form.............................................. (Requires Signature)**
Please fill out this form in its entirety. We are required to obtain this
information so that we can help you determine a suitable amount
to allocate to this investment.

**Page 12-13 Commodity Customer Agreement**
Please read carefully.

**Page 14**     **Consent to Jurisdiction and Customer Agreement ....... (Requires Signature)**
Please read and sign in both places.

**Page 15**     **Arbitration Agreement and Joint Account Agreement..................... (Optional)**
Please read Arbitration Agreement and sign if you prefer
to use the arbitration process to settle any potential disputes.

Read and sign the Joint Account Agreement if you wish
to open a joint account.

**Page 16**     **Joint Owner Information .................................................................. (Optional)**
Read and sign Joint Owner Information form if you wish
to open a joint account.

**Page 17**     **Privacy Policy ................................................................................. (Optional)**
Please read carefully.

**Page 18**     **Regulation 190.10, Authorization to Transfer Funds, ...................... (Optional)**
**Hedge Confirmation**
Please read Reg. 190.10 Non-cash Margin Disclosure.

Please sign Authorization to Transfer Funds if you anticipate opening
more than one account and wish to move money between them.

Please sign Hedge Confirmation if you are using account to
hedge physical commodities.

14

**COM**TRUST

Introduced by:

_John T. Bell_
Customer Name (Please Print)

_____
Account Number/Sales Code

**COMMODITY CUSTOMER AGREEMENT**
**INDIVIDUAL/JOINT ACCOUNT FORMS**

## REGULATION 1.55
### RISK DISCLOSURE STATEMENT

THE RISK OF LOSS IN TRADING COMMODITY FUTURES CONTRACTS CAN BE SUBSTANTIAL. YOU SHOULD, THEREFORE, CAREFULLY CONSIDER WHETHER SUCH TRADING IS SUITABLE FOR YOU IN LIGHT OF YOUR CIRCUMSTANCES AND FINANCIAL RESOURCES. IN CONSIDERING WHETHER TO TRADE, YOU SHOULD BE AWARE OF THE FOLLOWING POINTS

(1) You may sustain a total loss of the initial margin funds and any additional funds that you deposit with your broker to establish or maintain a position in the commodity futures market, and you may incur losses beyond these amounts. If the market moves against your position, you may be called upon by your broker to deposit a substantial amount of additional margin funds, on short notice, in order to maintain your position. If you do not provide the required funds within the time required by your broker, your position may be liquidated at a loss, and you will be liable for any resulting deficit in your account.

(2) Under certain market conditions, you may find it difficult or impossible to liquidate a position. This can occur, for example, when the market reaches a daily price fluctuation limit ("limit move").

(3) Placing contingent orders, such as "stop-loss" or "stop-limit" orders, will not necessarily limit your losses to the intended amounts, since market conditions on the exchange where the order is placed may make it impossible to execute such orders.

(4) All futures positions involve risk, and a "spread" position may not be less risky than an outright "long" or "short" position.

(5) The high degree of leverage (gearing) that is often obtainable in futures trading because of the small margin requirements can work against you as well as for you. Leverage (gearing) can lead to large losses as well as gains.

(6) You should consult your broker concerning the nature of the protections available to safeguard funds or property deposited for your account.

ALL OF THE POINTS NOTED ABOVE APPLY TO ALL FUTURES TRADING WHETHER FOREIGN OR DOMESTIC. IN ADDITION, IF YOU ARE CONTEMPLATING TRADING FOREIGN FUTURES OR OPTIONS CONTRACTS, YOU SHOULD BE AWARE OF THE FOLLOWING ADDITIONAL RISKS:

(7) Foreign futures transactions involve executing and clearing trades on a foreign exchange. This is the case even if the foreign exchange is formally 'linked' to a domestic exchange, whereby a trade executed on one exchange liquidates or establishes a position on the other exchange. No domestic organization regulates the activities of a foreign exchange, including the execution, delivery, and clearing of transactions on such an exchange, and no domestic regulator has the power to compel enforcement of the rules of the foreign exchange or the laws of the foreign country. Moreover, such laws or regulations will vary depending on the foreign country in which the transaction occurs. For these reasons, customers who trade on foreign exchanges may not be afforded certain of the protections which apply to domestic transactions, including the right to use domestic alternative dispute resolution procedures. In particular, funds received from customers to margin foreign futures transactions may not be provided the same protection as funds received to margin futures transactions on domestic exchanges. Before you trade, you should familiarize yourself with the foreign rules which will apply to your particular transaction.

(8) Finally, you should be aware that the price of any foreign futures or option contract and, therefore, the potential profit and loss resulting therefrom, may be affected by any fluctuation in the foreign exchange rate between the time the order is placed and the foreign futures contract is liquidated or the foreign option contract is liquidated or exercised.

THIS BRIEF STATEMENT CANNOT, OF COURSE, DISCLOSE ALL THE RISKS AND OTHER ASPECTS OF THE COMMODITY MARKETS.

I hereby acknowledge that I have received and understood this risk disclosure statement.

x _John T. Bell_
Signature

x _RECD JUN 2 0 2005_
Joint Owner Signature

x _6/13/05_
Date

1

B 0041

**COM***TRUST*

_____

**Customer Name (Please Print)**

## OPTION DISCLOSURE STATEMENT

_____

**Account Number/Sales Series**

### PLEASE READ CAREFULLY, SIGN AND RETURN - DETACH AND RETAIN DISCLOSURE STATEMENT

**NOTE TO OUR OPTION CUSTOMERS: COMPLETE AND RETURN THIS PAGE TO US.**

Introduced by:

I acknowledge that you have provided me, or prior to my entering into any transaction involving a commodity option will provide me, the information set forth in Section (2) of the attached disclosure statement and any other appropriate or necessary information concerning such transaction.

In addition to premiums and/or margin, I understand that I will incur transaction costs, including but not limited to, commissions, floor broker fees, exchange and clearing house charges, regulatory assessments and ComTrust surcharges, if any. I understand that I will also be charged, after I have paid for an option, either a commission to offset the option or a commission and additional transactions costs, if the option expires or is exercised or assigned. In the case of an exercise or assignment, I may incur additional commissions and transaction costs for the futures contract which I will receive and its subsequent liquidation. I further understand that some exchanges impose fees when options are abandoned and that transaction costs are subject to change without notice.

I am aware that particular commodity options may cease to trade at any time or expire, either of which event may result in my financial loss. I also understand that some exchanges may automatically exercise long in the money options pursuant to the regulations of such exchange.

I hereby state that commodity option trading is not unsuitable for me in light of my investment objectives, financial situation, needs, experience and knowledge. You shall not be liable in connection with executing, handling exercising and/or offsetting put or call options for my account, except for gross negligence or willful misconduct on your part.

I agree that transactions shall be subject to the rules of the exchange(s) where they are effected, including, but not limited to, their position and exercise limit rules.

x ____  6/13/05 ____     RECD JUN 2 2 2005     x _John T. Bell____
Date                                              Customers signature

                                                 x _____
                                                 Joint Owner Signature, if any.

**B 0039**

# PLEASE READ AND RETAIN THE FOLLOWING DISCLOSURE STATEMENT

## INTRODUCTION

This Risk Disclosure is divided into two parts. Parts I and II are a general discussion of exchange-traded options on futures. You should read this document carefully and be sure that you understand the concepts of trading options on futures contracts. If you have any questions or need clarification or further information, please contact your Account Executive.

# PART I

## OPTIONS DISCLOSURE STATEMENT

BECAUSE OF THE VOLATILE NATURE OF THE COMMODITIES MARKETS, THE PURCHASE AND GRANTING OF COMMODITY OPTIONS INVOLVE A HIGH DEGREE OF RISK. COMMODITY OPTION TRANSACTIONS ARE NOT SUITABLE FOR MANY MEMBERS OF THE PUBLIC. SUCH TRANSAC-TIONS SHOULD BE ENTERED INTO ONLY BY PERSONS WHO HAVE READ AND UNDERSTOOD THIS DISCLOSURE STATEMENT AND WHO UNDERSTAND THE NATURE AND EXTENT OF THEIR RIGHTS AND OBLIGATIONS AND OF THE RISKS INVOLVED IN THE OPTION TRANSACTIONS COVERED BY THIS DISCLOSURE STATEMENT.

BOTH THE PURCHASER AND THE GRANTOR SHOULD KNOW WHETHER THE PARTICULAR OPTION IN WHICH THEY CONTEMPLATE TRADING IS AN OPTION WHICH, IF EXERCISED, RE-SULTS IN THE ESTABLISHMENT OF A FUTURES CONTRACT (AN "OPTION ON A FUTURES CON-TRACT) OR RESULTS IN THE MAKING OR TAKING OF DELIVERY OF THE ACTUAL COMMODITY UNDERLYING THE OPTION (AN "OPTION ON A PHYSICAL COMMODITY"). BOTH THE PURCHASER AND THE GRANTOR OF AN OPTION ON A PHYSICAL COMMODITY SHOULD BE AWARE THAT, IN CERTAIN CASES, THE DELIVERY OF THE ACTUAL COMMODITY UNDERLYING THE OPTION MAY NOT BE REQUIRED AND THAT, IF THE OPTION IS EXERCISED, THE OBLIGATIONS OF THE PUR-CHASER AND GRANTOR WILL BE SETTLED IN CASH.

A PERSON SHOULD NOT PURCHASE ANY COMMODITY OPTION UNLESS HE IS ABLE TO SUS-TAIN A TOTAL LOSS OF THE PREMIUM AND TRANSACTION COSTS OF PURCHASING THE OP-TION. A PERSON SHOULD NOT GRANT ANY COMMODITY OPTION UNLESS HE IS ABLE TO MEET ADDITIONAL CALLS FOR MARGIN WHEN THE MARKET MOVES AGAINST HIS POSITION AND, IN SUCH CIRCUMSTANCES, TO SUSTAIN A VERY LARGE FINANCIAL LOSS.

A PERSON WHO PURCHASES AN OPTION SHOULD BE AWARE THAT IN ORDER TO REALIZE ANY VALUE FROM THE OPTION, IT WILL BE NECESSARY EITHER TO OFFSET THE OPTION POSITION OR TO EXERCISE THE OPTION. IF AN OPTION PURCHASER DOES NOT UNDERSTAND HOW TO OFFSET OR EXERCISE AN OPTION, THE PURCHASER SHOULD REQUEST AN EXPLA-NATION FROM THE FUTURES COMMISSION MERCHANT OR THE INTRODUCING BROKER. CUS-TOMERS SHOULD BE AWARE THAT IN A NUMBER OF CIRCUMSTANCES, SOME OF WHICH WILL BE DESCRIBED IN THIS DISCLOSURE STATEMENT. IT MAY BE DIFFICULT OR IMPOSSIBLE TO OFFSET AN EXISTING OPTION POSITION ON AN EXCHANGE.

THE GRANTOR OF AN OPTION SHOULD BE AWARE THAT IN MOST CASES A COMMODITY OP-TION MAY BE EXERCISED AT ANY TIME FROM THE TIME IT IS GRANTED UNTIL IT EXPIRES. THE PURCHASER OF AN OPTION SHOULD BE AWARE THAT SOME OPTION CONTRACTS MAY PRO-VIDE ONLY A LIMITED PERIOD OF TIME FOR EXERCISE OF THE OPTION.

THE PURCHASER OF A PUT OR A CALL IS SUBJECT TO THE RISK OF LOSING THE ENTIRE PURCHASE PRICE OF THE OPTION - THAT IS THE PREMIUM PAID FOR THE OPTION PLUS ALL TRANSACTION COSTS.

THE COMMODITY FUTURES TRADING COMMISSION REQUIRES THAT ALL CUSTOMERS RE-CEIVE AND ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT BUT DOES NOT INTEND THIS STATEMENT AS A RECOMMENDATION OR ENDORSEMENT OF EXCHANGE-TRADED COMMODITY OPTIONS.

**(1)   Some of the Risks of Option Trading.**

Specific market movements of the underlying future or underlying physical commodity cannot be predicted accurately.

The grantor of a call option who does not have a long position in the underlying futures contract or underlying physical commodity is subject to risk of loss should the price of the underlying futures contract or underlying physical commodity be higher than the strike price upon exercise or expiration of the option by an amount greater than the premium received for granting the call option.

The grantor of a call option who has a long position in the underlying futures contract or underlying physical commodity is subject to the full risk of a decline in price of the underlying position reduced by the premium received for granting the call. In exchange for the premium received for granting a call option, the option grantor gives up all of the potential gain resulting from an increase in the price of the underlying futures contract or underlying physical commodity above the option strike price upon exercise or expiration of the option.

The grantor of a put option who does not have a short position in the underlying futures contract or underlying physical commodity (e.g., commitment to sell the physical) is subject to risk of loss should the price of the underlying futures contract or underlying physical commodity decrease below the strike price upon exercise or expiration of the option by an amount in excess of the premium received for granting the put option.

The grantor of a put option on a futures contract who has a short position in the underlying futures contract is subject to the full risk of a rise in the price of the underlying position reduced by the premium received for granting the put. In exchange for the premium received for granting a put option on a futures contract, the option granter gives up all of the potential gain resulting from a decrease in the price of the underlying futures contract below the option strike price upon exercise or expiration of the option. The grantor of a put option on a physical commodity who has a short position (e.g., commitment to sell the physical) is subject to the full risk of a rise in the price of the physical commodity which must be obtained to fulfill the commitment reduced by the premium received for granting the put. In exchange for the premium, the grantor of a put option on a physical commodity gives up all the potential gain which would have resulted from a decrease in the price of the commodity below the option strike price upon exercise or expiration of the option.

**(2)   Description of Commodity Options.**

Prior to entering into any transaction involving a commodity option, an individual should thoroughly understand the nature and type of option involved and the underlying futures contract or physical commodity. The futures commission merchant or introducing broker is required to provide, and the individual contemplating an option transaction should obtain:

(i)   An identification of the futures contract or physical commodity underlying the option and which may be purchased or sold upon exercise of the option or, if applicable, whether exercise of the option will be settled in cash;

(ii)   The procedure for exercise of the option contract, including the expiration date and latest time on that date for exercise. (The latest time on an expiration date when an option may be exercised may vary; therefore, option market participants should ascertain from their futures commission merchant (if their introducing broker the latest time the firm accepts exercise instructions with respect to a particular option);

(iii)   A description of the purchase price of the option, including the premium, commissions, costs, fees and other charges. (Since commissions and other charges may vary widely among futures commission merchants and among introducing brokers, option customers may find it advisable to consult more than one firm when opening an option account);

(iv)   A description of all costs in addition to the purchase price which may be incurred if the commodity option is exercised, including the amount of commissions (whether termed sales commissions or otherwise), storage, interest, and all similar fees and charges which may be incurred;

(v)    An explanation and understanding of an option grantor's initial margin requirement and obligation to provide additional margin in connection with such an option position, or a position in a futures contract, if applicable;

(vi)    A clear explanation and understanding of any clauses in the option contract and of any items included in the option contract explicitly or by reference which might affect the customers obligations under the contract. This would include any policy of the futures commission merchant or the introducing broker or rule of the exchange on which the option is traded that might affect the customer's ability to fulfill the option contract or to offset the option position in a closing purchase or closing sale transaction (for example, due to unforeseen circumstances that require suspension or termination of trading); and

(vii)    If applicable, a description of the effect upon the value of the option position that could result from limit moves in the underlying futures contract.

### (3)    The Mechanics of Option Trading.

Before entering into any exchange-traded option transaction, an individual should obtain a description of how commodity options are traded.

Option customers should clearly understand that there is no guarantee that option positions may be offset by either a closing purchase or closing sale transaction on an exchange. In this circumstance, option grantors could be subject to the full risk of their positions until the option position expires, and the purchaser of a profitable option might have to exercise the option to realize a profit.

For an option on a futures contract, an individual should clearly understand the relationship between exchange rules governing options transactions and exchange rules governing the underlying futures contract. For example, an individual should understand what action, if any, the exchange will take in the option market if trading in the underlying futures market is restricted or the futures prices have made a "limit move."

The individual should understand that the option may not be subject to daily price fluctuation limits while the underlying futures may have such limits, and, as a result, normal pricing relationships between options and the underlying future may not exist when the future is trading at its price limit. Also, underlying futures positions resulting from exercise of options may not be capable of being offset if the underlying future is at a price limit.

### (4)    Margin Requirements.

Commodity Futures Trading Commission rules require the purchaser of an option to pay the full option premium when the option position is opened.
Before granting an option, an individual should fully understand the applicable margin requirements, and particularly should be aware of the obligation to put up additional margin money in the case of adverse market moves.

### (5)    Profit Potential of an Option Position.

An option customer should carefully calculate the price which the underlying futures contract or underlying physical commodity would have to reach for the option position to become profitable. This price would include the amount by which the underlying futures contract or underlying physical commodity would have to rise above or fall below the strike price to cover the sum of the premium and all other costs incurred in entering to and exercising or closing (offsetting) the commodity option position.

Also, an option customer should be aware of the risk that the futures price prevailing at the opening of the next trading day may be substantially different from the futures price which prevailed when the option was exercised.   Similarly, for options on physicals that are cash settled, the physicals price prevailing at the time the option is exercised may differ substantially from the cash settlement price that is determined at a later time. Thus, if a customer does not cover the position against the possibility of underlying commodity price change, the realized price upon option exercise may differ substantially from that which existed at the time of exercise.

6

**(6)    Deep-Out-of-the-Money Options.**

A person contemplating purchasing a deep-out-of-the-money option (that is, an option with a strike price significantly above, in the case of a call, or significantly below, in the case of a put, the current price of the underlying futures contract or underlying physical commodity) should be aware that the chance of such an option becoming profitable is ordinarily remote.

On the other hand, a potential grantor of a deep-out-of-the-money option should lie aware that such options normally provide small premiums while exposing the grantor to all of the potential losses described in Section (1) of this disclosure statement.

**(7)    Glossary of Terms.**

(i)      Contract market - Any board of trade (exchange) located in the United States which has been designated by the Commodity Futures Trading Commission to list a futures contract or commodity option for trading.

(ii)     Exchange-traded option; put option; call option - The options discussed in this disclosure statement are limited to those which may be traded on a contract market. These options (subject to certain exceptions) give an option purchaser the right to buy in the case of a call option, or to sell in the case of a put option, a futures contract or the physical commodity underlying the option at the stated strike price prior to the expiration date of the option. Each exchange-traded option is distinguished by the underlying futures contract or underlying physical commodity, strike price, expiration date, and whether the option is a put or a call.

(iii)    Underlying futures contract - The futures contract which may be purchased or sold upon the exercise of an option on a futures contract.

(iv)     Underlying physical commodity - The commodity of a specific grade (quality), and quantity which may be purchased or sold upon the exercise of an option on a physical commodity.

(v)      Class of options - A put or call covering the same underlying futures contract or underlying physical commodity.

(vi)     Series of options - Options of the same class having the same strike price and expiration date.

(vii)    Exercise price - See strike price.

(viii)   Expiration date - the last day when an option may be exercised.

(ix)     Premium - The amount agreed upon between the purchaser and seller for the purchase or sale of a commodity option.

(x)      Strike price - The price at which a person may purchase or sell the underlying futures contract or underlying physical commodity upon exercise of a commodity option. This term has the same meaning as the term "exercise price."

(xi)     Short option position - See opening sale transaction.

(xii)    Long option position - See opening purchase transaction.

(xiii)  Types of options transactions -

    (A)  Opening purchase transaction - A transaction in which an individual purchases an option and thereby obtains a long option position.

    (B)  Opening sale transaction - A transaction in which an individual grants an option and thereby obtains a short option position.

    (C)  Closing purchase transaction - A transaction in which an individual with a short option position liquidates the position. This is accomplished by a closing purchase transaction for an option of the same series as the option previously granted.  Such a transaction may be referred to as an offset transaction.

    (D)  Closing sale transaction - A transaction in which an individual with a long option position liquidates the position. This is accomplished by a closing sale transaction for an option of the same series as the option previously purchased. Such a transaction may be referred to as an offset transaction.

(xiv)  Purchase price - The total actual cost paid or to be paid, directly or indirectly, by a person to acquire a commodity option. This price includes all commissions and other fees, in addition to the option premium.

(xv)  Grantor, writer, seller - An individual who sells an option. Such a person is said to have a short position.

(xvi)  Purchaser - An individual who buys an option.  Such a person is said to have a long position.

## ADDITIONAL DISCLOSURE MATERIAL

Part I of this Option Disclosure Document contains disclosures regarding commodity option trading which the Commodity Futures Trading Commission requires to be made. Much of the information contained in Part I is clarified and explained further in Part II. Part II also contains additional information concerning exchange-traded commodity options. You should review Part I of this Options Disclosure Document in connection with Part II. The exchange-traded commodity option pilot program cannot be understood fully without the information contained in Part II.

## PART II
## GENERAL INFORMATION

It is important to note that contract terms and conditions are subject to change and additional contracts my be authorized for trading. Contact your futures commission merchant for details on options contracts.

You should also be aware that there may be tax consequences of trading options and should consult with your own tax advisor for such information.

## COSTS AND FEES

**Purchasing and Granting Options.**

If you are purchasing an option, you will pay a premium which must be paid in full when the option position is opened. The purchaser of an option is subject to the risk of losing the entire premium plus transaction costs as a result of adverse price movement, but is not required to make additional payments on an unprofitable option position.

Exchange rules require the grantor of an option to make a margin deposit when the option position is opened, and may require payment of additional margin in the event of adverse market movement. The grantor of an option is subject to the risk of substantial losses which may be many times greater than the margin deposit required to open the option position. The margin requirements of the various exchanges may differ significantly. Exchange margin requirements are minimum requirement, and many futures commission merchants impose more stringent margin requirements upon their customers. You should contact your account executive for specific information on margin requirements for any option position you are considering. Margin requirements are subject to change at any time. Changes in margin requirements may apply retroactively to option positions previously established. Accordingly, option grantors should assure themselves that they have sufficient available capital to meet increases in margin requirements, should such increases occur.

**Fees.**

In addition to premiums and/or margin, you will incur transaction costs such as commission, floor broker fees, exchange and clearing house charges, regulatory assessments and tax payments. You may also be charged, after you have paid for your option, either a commission to offset the option or a commission and additional transactions costs, if your option is exercised. In the case of an exercise you may incur transaction costs for the futures contract which you will receive and subsequently liquidate. Some exchanges impose fees when options are abandoned. All transaction costs are subject to change without notice.

## RISKS

The trading mechanics are designed to provide for competitive execution and to make available to buyers and sellers a continuous market in which an option once purchased can later be sold; and in which an option, once granted, can later be liquidated by an offsetting purchase.

Although each exchange's trading system is designed to provide market liquidity for the options traded on that exchange, it must be recognized that there can be no assurance that a liquid offset market on the exchange will exist for any particular option, or at any particular time, and for some options, no offset market on that exchange may exist at all. In such an event, it might not be possible to effect offsetting transactions in particular options. Thus, to realize any profit, a holder would have to exercise his option and have to assume all risks and to comply with margin requirements for the underlying futures contracts or in the event of an option on a physical commodity incur the costs and risks of holding the physical good. A grantor could not terminate his obligation until the option expired or he was

assigned an exercise notice. You may exercise your option but be unable to liquidate your resulting futures position because of daily price limits or lack of liquidity in the futures market.

## PRICE LIMITS

As mentioned elsewhere, most exchanges have rules which limit the amount of fluctuation in commodity futures contract prices during a single trading day. Exchanges may also impose daily limits for options contracts. It should, however, be emphasized that not all options and not all futures contracts are subject to such limits, and

<blockquote>
(i)     for those that are, limits maybe removed at some point prior to the respective expiration or delivery, and

(ii)     for those that are not, exchange rules may provide for the imposition of limits under certain circumstances.
</blockquote>

You should fully understand provisions relating to daily limits which are applicable to a specific option and its related futures contract.

Positions in option and futures markets can be taken or liquidated only if traders are willing to offset trades at or within the limit during the period for trading on such day. The daily limit rule does not limit losses which might be suffered by a customer, because it may prevent the liquidation of unfavorable positions. Also, option prices may move the daily limit for several consecutive trading days, thus preventing liquidation and subjecting a person with a commodity option position to substantial losses.

## TRANSFER OF ACCOUNTS

A customer may transfer his option account from one futures commission merchant to another. A customer who wishes to make such a transfer should contact his new futures commission merchant for instructions. Customers should be aware that there may be commissions or costs. fees or other charges related to transfers and these may be assessed by both your old and new futures commission merchants and by any introducing broker with whom you may have dealt.

## EXERCISE

Exercise of a commodity option may occur on any trading day prior to expiration date. If you exercise your option on a futures contract and assume a position in the underlying futures contract, you will be subject to all of the risks associated with commodity futures trading and attendant margin requirements. If you assume a position in the physical commodity, you will be subjected to all costs and risks associated with ownership of a physical good.

Your futures commission merchant may require advance notice of your intention to exercise, and may impose charges for exercise of the option and fees and commissions for the offset of the resulting futures or physical position. Some options may be automatically exercised. You should check with your futures commission merchant regarding this possibility.

**INDIVIDUAL INFORMATION FORM** (If joint account, all joint owners must complete an information form)

NAME _John T. Nell_

DATE OF BIRTH _5/8/26_

COMPLETE RESIDENCE ADDRESS
_4N009 Thornapple Rd_
_St Charles IL_
_60174_

RESIDENCE PHONE (include area code) _630 584 6048_
CELLULAR PHONE ___
E-MAIL ADDRESS _JTBELL678@Juno.com_
_RIOMG - 27.000 Clk_
_FEO - 10404_
_RIOMG 27K Plck_

ADDRESS FOR NOTICES (Only if different from residence address)

EMPLOYER'S NAME AND ADDRESS
_Retired_

BUSINESS PHONE (include area code) ___

NATURE OF EMPLOYER'S BUSINESS (If self-employed, list nature of self-employment)    POSITION HEAD/TITLE

IF MARRIED, LIST SPOUSES OCCUPATION AND EMPLOYER
_Housewife_

BANK REFERENCE AND CONTACT PERSON _Harris Bank_    ACCOUNT NUMBER _0000 5700247324_    BANK PHONE _630-377-4100_

IF ACCOUNT IS TRADED BY OTHER THAN ACCOUNT OWNER, POWER OF ATTORNEY FORMS ARE REQUIRED.

ANNUAL INCOME ___ Under $25,000; _✓_ 25K - 50K; ___ 50K - 75K; ___ 75K - 100K; ___ 100K - 250K; ___ Over 250K

NET WORTH ___ Under $25,000; ___ 25K - 50K; ___ 50K - 75K; ___ 75K - 100K; ___ 100K - 200K; ___ 200K - 500K;
___ 500K - 1 MIL; _✓_ 1 MIL - 5 MIL; ___ 5 MIL - 10MIL; ___ Over 10 MIL

PAST INVESTMENT EXPERIENCE:
Years Experience
Commodity Futures ___
Commodity Options ___

Years Experience
Stocks/Bonds _12_
Other: (list) ___

Do you now, or did you ever participate in a commodities account? If Yes, please indicate the firm that carried the account and whether the account is open or closed. _No_

If you control or have a financial interest of ten (10%) per cent or more in any other commodity account at ComTrust, indicate other accounts: _None_

What is your investment purpose in opening this account? ☒ Speculation ☐ Hedging
What is your expected trading pattern? ☒ Futures ☒ Options ☒ Both
What markets are you interested in trading? ___ ☒ All ☐ Grains ☐ Energies ☐ Financials ☐ Metals ☐ Equities ☐ Other, Specify

Are you or your spouse exchange members or registered with the Commodity Futures Trading Commission ("CFTC") or the Securities Exchange Commission ("SEC") in any capacity? If YES, state exchange membership and/or registration status; also, employer authorization may be required. YES ___ NO _X_

REQUEST FOR TAX PAYER IDENTIFICATION NUMBER    I CERTIFY UNDER PENALTIES OF PERJURY THAT:
Enter: Social Security Number _L L 2 - 2 2 - 5 5 4 5_

(1) The number shown above is my correct taxpayer identification number (or, if marked "applied for", I am waiting for a number to be issued to me), and

(2) I am not subject to backup withholding because I am exempt from backup withholding or I have not been notified by the IRS that I am subject to backup withholding due to a failure to report all interest or dividends or the IRS has notified me that I am no longer subject to backup withholding.

(CROSS OUT ITEM NUMBER (2) IF YOU ARE SUBJECT TO BACKUP WITHHOLDING); OR

NON-U.S. CITIZENS, if this line ___ is initialed. I am a NON U.S. Citizen and NON U.S. Resident and I have not been, and do not plan to be in the U.S. for more than 183 days during any calendar year and I am not engaged, and do not plan to be engaged during the year, in a U.S. trade or business that has effectively connected gains from Broker transactions or my country of citizenship has a tax treaty with the U.S. that exempts transactions from U.S.

SIGNATURE X _John T. Bell_    DATE X _6/23/05_

11

RECD JUN 15 2005

## PLEASE READ THIS COMMODITY CUSTOMER AGREEMENT CAREFULLY

In consideration of your accepting its account and your agreement to act as its broker, Customer agrees to the following with respect to any of its accounts with ComTrust ("ComTrust") for the purchase and sale of securities, monies, physical commodities, futures contracts, options on futures, foreign futures contracts, options on foreign futures, forward contracts and foreign exchange contracts (collectively referred to as "commodities" or "property"):

1. I represent that I am of the age of majority and am not an employee of any Securities or Commodity Exchange or Board of Trade ("exchanges") or of a member firm thereof or self-regulatory agency or of a bank, trust or insurance company, or any broker, firm or corporation engaged in the business of dealing in securities or commodities, and will promptly notify you if I become so employed. I represent that I am the sole owner of my account(s) and that no person, except as disclosed by me to you, has any interest therein.

2. All transactions for my account(s) shall be subject to the regulations of all applicable federal, state and self-regulatory agencies including the constitution, rules and customs, as the same may be constituted from time to time, of the exchanges, market or place (and the clearing associations, if any) where executed or, if different, your house rules. This paragraph is solely for your protection and your failure to comply with any such regulations, constitutions., rules and/or customs shall not be a breach of this Agreement and shall not relieve me of any of my obligations under this Agreement.

3. I agree not to exceed the position limits of any federal agency or exchange for my account(s), acting alone or in concert with others. I will promptly notify you of positions for which I am required to file reports with the Commodity Futures Trading Commission ("CFTC") or any exchange.

4. I understand that you have at your sole and absolute discretion the right to limit positions in my account(s), to decline to accept any orders and to require that my account(s) be transferred to another firm. I understand that if I do not promptly transfer my positions upon your demand you reserve the right to liquidate positions in my account(s) at your sole and absolute discretion.

5. I understand that you act as agent and not as principal for your clients' commodity futures and commodity options transactions which are effected on exchanges. Consequently, you do not guarantee the performance of the obligations of any party to the futures or options contracts purchased and/or sold by your clients. I understand you may act as principal in certain cash, forward, foreign commodity and foreign exchange transactions.

6. Any property belonging to me or in which I have an interest either individually or jointly with others, held by you or any of your subsidiaries or affiliates or carried in any accounts shall be subject to a general lien and security interest for the discharge of my obligations to you, wherever or however arising and without regard to whether or not you have made advances with respect to such property, and you are hereby authorized to sell and/or purchase any and all such property without notice to satisfy such general lien and security interest. I irrevocably appoint you as my attorney-in-fact with power of substitution to execute any documents for the perfection or registration of such general lien and security interest.

7. I agree to maintain such collateral and/or margin as you may from time to time, in your sole and absolute discretion, require and agree to pay immediately on demand any amount owing with respect to any of my accounts. Margin requirements may be increased at ComTrust's sole and absolute discretion and may differ from those established by the exchange on which the transaction is executed. Margin requirements are subject to change without notice and will be enforced retroactively and prospectively. I shall make deposits of margin as ComTrust requests within a reasonable time after such request. It is agreed and understood that one hour may be deemed to be a reasonable time; provided, however, that ComTrust, in its sole and absolute discretion, may request that deposits be made in a lesser period of time. ComTrust's failure to require satisfaction of a margin call within one hour, or any shorter time period, on any occasion shall not be deemed to be a waiver of its right to do so in the future. I shall provide ComTrust with the names of bank officers and information necessary for immediate verification of wire transfers.

8. In the event I fail to deposit sufficient funds to pay for any commodities and/or to satisfy any demands for original and/or variation margin, or whenever in your sole and absolute discretion you consider it necessary, you may, without prior demand or notice, when and if you deem appropriate, notwithstanding any rule of any exchange, liquid in the positions in my account(s), hedge and/or offset those positions in the cash market or otherwise, sell any property belonging to me or in which I have an interest cancel any open orders for the purchase and sale of any property. or borrow or buy any property required to make delivery against any sales, including a short sale, effected for me, all for my sole account and risk. Such sale or purchase may be public or private and may be made without advertising or notice to me and in such a manner as you may, in your sole and absolute discretion, determine, and no demands, tenders or notices which you may make or give shall invalidate my aforesaid waiver. I agree that ComTrust has no duty and is not required to liquidate positions in my account(s) and that the provisions of this paragraph are solely for the protection of ComTrust. The proceeds of such transactions, if any, are to be applied to reduce any indebtedness owing by me to you.

9. I acknowledge that I shall be liable for all losses in my account(s) whether or not my account(s) is liquidated and for any debts and deficiencies, including, but not limited to interest costs, expenses and attorneys' fees, including all debts and deficiencies resulting from a liquidation of my account(s).

10. I agree to pay storage and delivery charges and service fees charged to my account(s). I authorize you to pay and charge to my account(s) any give-up or give-in fee that may be charged by any executing firm or broker who I or my agent have authorized to execute transactions for my account(s). I agree to pay such fees, brokerage and commission charges as you may impose or which may be imposed by any exchange or regulatory organization. Unless otherwise agreed, you may charge exchange, clearing, brokerage and NFA fees as separate items for each transaction in my account(s). I understand that I will incur NFA fees not to exceed $.10 per each futures, round turn and up to $.10 per each option round turn.

11. This Agreement shall be binding upon my heirs, executors, administrators and conservators. In the event of my death, incompetence or disability, whether or not executors, administrator, committees or conservators of my estate and property shall have qualified or been appointed, you have the right to cancel or complete any open orders for the purchase or sale of any commodities, you may place orders for the sale of commodities which you may be carrying for me, buy any commodities of which my account(s) may be short, or any part thereof, under the same terms and conditions as herein above stated, as though I were alive and competent without prior notice to my heirs, executors, administrators, committees or conservators, and without demand upon any of them.

12. Written confirmation of actual transactions and/or orders, purchase and sales notices, correction notices and statements of my account(s) (collectively "statements") shall be conclusive and deemed ratified by me unless ComTrust shall receive oral notice from me to the contrary IMMEDIATELY upon my receipt thereof and thereafter confirmed by me in writing. Oral notice shall be given to ComTrust by telephoning ComTrust at (305) 940-8220. Attention: Compliance Department. In any event, such statements shall be conclusive and deemed ratified by me if not objected to in writing within SEVEN days after mailing by you to me. In the event I fail to receive statements for my account within SEVEN days from the date of a transaction in my account, such transaction shall be conclusive and deemed ratified by me unless I notify you IMMEDIATELY in writing of my failure to receive such statements. Communications mailed to me at the address specified hereon shall, until you have received notice in writing of a different address be deemed to have been personally delivered to me and I agree to waive all claims resulting from failure to receive such communications.

   Written notice to ComTrust under this paragraph shall be sent to:  ComTrust, 2999 N.E. 191ST Street, Suite 601, Aventura, FL  33180. Attention: Compliance Department.

13. I understand that you are not responsible for any losses resulting directly or indirectly from any government restriction, exchange ruling, suspension of trading, actions of independent floor brokers, or other persons beyond your control, war, strike, national disaster or wire

malfunction, delay in mails or any other delay or inaccuracy in the transmission of orders or the information because of a breakdown or failure of transmission or communication facilities. All price quotations, commodity information, or trade reports given to me are also subject to change and errors, as well as delays in reporting and I acknowledge that reliance upon such information is at my own risk. I understand that I am bound to the actual executions of transactions on the exchange(s) and that you arc not bound by erroneous reports of executions transmitted to me.

14. I acknowledge that you are hereby specifically authorized for your account and benefit, from time to time and without notice to me, either separately or with others, to lend, pledge, repledge, hypothecate or rehypothecate, either to yourself or to others, any and all property (including, but not limited to, metals, warehouse receipts or other negotiable instruments) held by you in any of my accounts and you shall not at any time be required to deliver to me such identical property, but may fulfill your obligations to me by delivery of property of the same kind and amount.

15. If I initiate a transaction on an exchange or in a market which margins or settles the position(s) in a currency different than the type held or deposited in my account(s), you shall have the right to convert such currency from one type to another (e.g., U.S. currency to foreign currency, foreign currency to U.S. currency, or foreign currency to other foreign currency) as you in your sole and absolute discretion may determine at an exchange rate determined by you in your discretion based on prevailing money markets. Any profit or loss from a fluctuation in the exchange rate of such currency will be for my sole account and risk. Unless I instruct you otherwise, monies I deposit with you in currency other than U.S. dollars and unrealized profits in currency other than U.S. dollars are not intended to margin, guarantee or secure transactions on United States contract markets.

16. No provision of this Agreement can be amended or waived except in writing signed by a Principal of your firm. No oral agreements or instructions contrary to any provisions of this Agreement shall be recognized or enforceable. I agree to be bound by any amendments to this Agreement to which I have not objected in writing within three business days after receipt thereof. The failure of ComTrust to enforce, at any time, any provision of this Agreement shall not be construed to be a waiver of such provision and shall not in any way affect the validity of this Agreement or the right of ComTrust thereafter to enforce each and every provision of this Agreement. No waiver or amendment shall be implied from your conduct, action or inaction.

17. CFTC Reg. §15.05 - Designation of ComTrust as Agent of Foreign Brokers, Customers of Foreign Brokers and Foreign Traders, and Reg. §21.03 Selected Special Calls - Duties of Foreign Brokers, Domestic and Foreign Traders, Futures Commission Merchants and Contract Markets.

Foreign Broker means: Any non-U.S. resident who carries an account in commodities for any other person. Foreign Trader means: Any non-U.S. resident who owns or controls an account in commodities.

If I am a foreign trader or foreign broker I understand that pursuant to CFTC Regulation 15.05, you are my agent (and in the case of a foreign broker the agent of my Customers) for purposes of accepting delivery and service of any communications issued by the CFTC with respect to any futures or options contracts which are or have been maintained in accounts carried by you. Service of delivery of any such communication shall constitute valid and effective service or delivery upon me (and if I am a foreign broker, upon my Customers). I understand that said regulation requires you to transmit the communication promptly to me (or my customers) in a manner which is reasonable under the circumstances or as specified by the CFTC. I also understand CFTC Regulation 21.03 requires me to provide to the CFTC upon special call, market information concerning my options and futures trading (or my customer) as outlined in the regulation. If I fail to respond to the special call the CFTC may direct the appropriate contract market and all brokers to prohibit further trades for or on my behalf (or for my customers) in the contract specified in the call unless such trades offset existing open contracts. Special calls are made where the information requested would assist the CFTC in determining whether a threat of market manipulation, corner, squeeze or other market disorder existed. Under Regulation 21.03(g), if I believe I am aggrieved by the action taken by the CFTC I shall have the opportunity for a prompt hearing after the Commission acts. (I understand that copies of Reg. § 15.05 and §21.03 are available from ComTrust upon my written request.)

18. I understand that some exchanges and clearing houses have established cut-off times for the tender of exercise instructions and that an option will become worthless if instructions are not received by ComTrust before such expiration time. I also understand that Certain exchanges and clearing houses automatically exercise some "in-the-money" options unless instructed otherwise. I acknowledge full responsibility for taking action either to exercise or to prevent the automatic exercise of an option contract, as the case may be, and you are not required to take any action with respect to an option contract, including, without limitation, any action to exercise an option prior to its expiration date or to prevent its automatic exercise, except upon my express instructions. I further understand that you may establish exercise cut-off times which may be different from the times established by exchanges and clearing houses. I understand that all short option positions are subject to assignment at any time including positions established on the same day that exercises are assigned, and assignment notices are allocated randomly from among all your customers' short options positions which are subject to assignment.

19. This Agreement shall enure to the benefit of ComTrust's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof for any reason whatsoever and to any of ComTrust's assigns. I agree that all of my rights and obligations under this Agreement shall not be assigned, transferred, sold or otherwise conveyed, and any such attempted assignment, transfer, sale or conveyance shall be null and void and of no force or effect. In any event, ComTrust may, subject to the applicable rules and regulations of the CFTC and the National Futures Association ("NFA"), assign this Agreement and transfer my account(s) to another duly registered futures commission merchant.

20. You are authorized to accept oral or telephonic orders as I or my authorized agent may give for transactions in my account(s). I hereby waive any defense that such order was not in writing or evidenced by a memorandum in writing as required by the Statute of Frauds or any other statute. Although authorized, you are not required to accept oral or telephonic orders. You are further authorized to record whether by tape, wire or other method, with or without a periodic tone signal, any and all telephonic or other oral communications between us, wills or without notice thereof.

21. Should you become a party, without fault on your part, to any action or proceeding arising out of my account(s) or orders given to you. I agree to indemnify and save you harmless therefrom and to pay you such attorneys' fees and costs incurred by you as the court or arbitration panel may determine. I shall further indemnify you and hold you harmless from and against any and all liabilities, losses, damages, costs and expenses, including attorneys' fee, which arise out of, or which in any manner or way whatsoever are related to any representation made by me in this Agreement, or by my failure to perform any of my agreements made herein, including, but not limited to, the failure to immediately pay any deficit balances which may arise in my account(s).

22. This Agreement has been made and delivered at Miami, Florida. Its validity, construction and enforcement shall be governed by the laws of the State of Florida without reference to its choice or conflicts of laws principles. This Agreement constitutes the entire understandings among the parties with respect to the subject matter hereof. Wherever possible, each portion of this Agreement shall be interpreted in such a manner to be valid and effective under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provisions of the remaining provisions of this Agreement.

23. In the event that this is an Introduced Account from an Independent Introducing Broker, Customer agrees that ComTrust is not responsible or liable whatsoever for any matters relating to sales practices, trading practices, errors in order entry or any similar or other matters, it being expressly understood, agreed and acknowledged by Customer that ComTrust's sole responsibilities hereunder relate to the execution, clearing, accounting and confirmation of transaction for the account of the Customer on various exchanges in accordance with the instructions received by ComTrust from the Independent Introducing Broker for and on behalf of Customer in accordance with usual and customary practices. Customer agrees to refrain from bringing any action or counterclaim against ComTrust and will assert any such claim against only the Independent Introducing Broker (or, where applicable, the non-employee commodity pool operator or commodity trading advisor) for any redress with respect to any matter other than ComTrust's gross negligence or willful misconduct in executing, clearing and/or accounting of transactions for the account of Customer. I AGREE NOT TO COMMENCE ANY LEGAL OR ADMINISTRATIVE PROCEEDING AGAINST COMTRUST UNTIL ANY DEFICIT BALANCE IN THE ACCOUNT(S) IS SATISFIED.

13

## CONSENT TO JURISDICTION

ALL ACTIONS, DISPUTES, CLAIMS OR PROCEEDINGS, INCLUDING, BUT NOT LIMITED TO, ANY ARBITRATION PRO-CEEDING, INCLUDING NFA ARBITRATIONS, ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH, OUT OF, OR RELATED TO OR FROM THE CUSTOMER AGREEMENT, ANY OTHER AGREEMENT BETWEEN THE CUSTOMER AND COMTRUST OR ANY ORDERS ENTERED OR TRANSACTIONS EFFECTED FOR CUSTOMER'S ACCOUNT(S) WHETHER OR NOT INITIATED BY COMTRUST SHALL BE ADJUDICATED ONLY IN COURTS OR OTHER DISPUTE RESOLUTION FORUMS WHOSE SITUS IS WITHIN THE CITY OF MIAMI, STATE OF FLORIDA, AND CUSTOMER HEREBY SPECIFICALLY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT OR ARBITRATION PROCEEDING LOCATED WITHIN THE CITY OF MIAMI, STATE OF FLORIDA.

CUSTOMER WAIVES ANY CLAIM CUSTOMER MAY HAVE THAT (A) CUSTOMER IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT OR ARBITRATION PROCEEDINGS LOCATED WITHIN THE STATE OF FLORIDA, (B) CUSTOMER IS IMMUNE FROM ANY LEGAL PROCESS (WHETHER THROUGH SER-VICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION, EXECUTION OR OTHERWISE) WITH RESPECT TO CUSTOMER OR CUSTOMER'S PROPERTY (C) ANY SUCH SUIT, ACTION OR PROCEEDINGS IS BROUGHT IN AN INCONVENIENT FORUM, (D) THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING IS IMPROPER OR (E) THIS CONSENT OR THE CUSTOMER AGREEMENT BETWEEN CUSTOMER AND COMTRUST MAY NOT BE ENFORCED IN OR BY SUCH COURT OR ARBITRATION PROCEEDING.

BY SIGNING THE CONTRACT CONTAINING THIS CONSENT TO JURISDICTION, CUSTOMER ACKNOWLEDGES ASSENT TO JURISDICTION AS SET FORTH ABOVE, AND FURTHER ACKNOWLEDGES THAT THESE CLAUSES WERE FREELY AND KNOWINGLY NEGOTIATED BETWEEN THE PARTIES.

The undersigned acknowledges that (s)he has received and understood the Consent to Jurisdiction

x _____  x __6/13/05___
Signature                                    Date

x _____  x _____
Joint Owner Signature, if any              Date.

THIS COMMODITY CUSTOMER AGREEMENT CONTAINS A CONTRACTUAL AGREEMENT. DO NOT SIGN UNTIL YOU HAVE READ IT CAREFULLY BY SIGNING BELOW, THE UNDERSIGNED REPRESENTS AND WARRANTS TO YOU THAT ALL INFORMATION CONTAINED HEREIN, OR IN ANY OTHER ACCOUNT FORM OR OTHER DOCUMENT FROM THE UNDERSIGNED IS TRUE AND CORRECT AND THAT IF ANY CHANGES TO SUCH INFORMATION OC-CUR, THE UNDERSIGNED WILL IMMEDIATELY INFORM YOU, IN WRITING, OF SUCH CHANGES. BY SIGNING BELOW, THE UNDERSIGNED ACKNOWLEDGES THAT (S)HE HAS READ AND UNDERSTANDS ALL OF THE TERMS AND CONDITIONS OF THE COMMODITY CUSTOMER AGREEMENT AND SHALL BE BOUND BY THEM.

PLEASE BE ADVISED THAT IN THE EVENT THAT THIS IS AN INTRODUCED ACCOUNT, COMTRUST'S ROLE AND LIABILITY IS LIMITED TO EXECUTION AND CLEARING MATTERS ONLY (PLEASE SEE PARAGRAPH 23)

x _____  x __6/13/05___
Signature                                    Date

x _____  x _____
Joint Owner Signature, if any              Date.

14

**B 0043**

# ARBITRATION AGREEMENT

THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC) AND ARBITRATION CONDUCTED BY A SELF-REGULATORY OR OTHER PRIVATE ORGANIZATION.

THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS, INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MERITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT BE VOLUNTARY.

BY SIGNING THIS AGREEMENT, YOU:

(1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW, AND

(2) ARE AGREEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR COMTRUST ("COMTRUST") MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT YOU ARE NOT, HOWEVER. WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT WITH RESPECT TO ANY DISPUTE WHICH MAY BE ARBITRATED PURSUANT TO THIS AGREEMENT, IN THE EVENT A DISPUTE ARISES. YOU WILL BE NOTIFIED IF COMTRUST INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION.

YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH COMTRUST. (See 17CFR 180.1 - 180.5)

x _____   x _____   x _6/18/05_
(Signature)                  Joint Owner Signature, if any        Date

# JOINT ACCOUNT AGREEMENT

If this account is held by more than one person or entity, all of the Joint Owners agree to be jointly and severally liable for the obligations assumed in the Commodity Customer Agreement. Further, any one or more of the Joint Owners, shall have full authority to act on behalf of the joint account as if (s)he alone were interested therein, all without notice to the others interested in said account and all for the account and risk of all Joint Owner's. Such authority shall include, but not be limited to:

(a) To buy, sell and trade in commodities (as such term is defined in the Commodity Customer Agreement) for present future delivery, on margin or otherwise, the power to sell including the power to sell "short";

(b) To deposit with and withdraw from ComTrust money, commodities, contracts for the purchase or sale of commodities, checks and other negotiable instruments, securities or other property;

(c) To receive and acquiesce in the correctness of notices, confirmations, requests demands and communications of every kind;

(d) To enter into a Commodity Customer Agreement;

(e) To settle, compromise, adjust and give releases with respect to any and all claims, demands, disputes and controversies, pending or contingent;

(f) To make other agreements and take any other action relating to any of the foregoing matters, including but no limited to the grant of discretionary trading authority to other individuals or entities.

Further, each Joint Owner hereby appoints each and every other Joint Owner as his/her agent and confers upon every other Joint Owner and each of them, the broadest possible power with respect to the above grants of authority; and each Joint Owner agrees to indemnify and hold ComTrust harmless, against and all claims that may arise by reason of its following any directions, instructions and orders given to it by any Joint Owner in respect of this account.

All property of any one or more of the Joint Owners held or carried by ComTrust shall be held as collateral security and with a general lien thereon for the payment of all debits, losses or expenses incurred in the joint account and vice versa, however arising. In the event of death or legal incapacity of any of the Joint Owners, the survivor(s) immediately shall give ComTrust notice and ComTrust may, before or after receiving such notice, take such action, require such documents, retain such assets and/or restrict transactions as ComTrust deems advisable, in its sole and absolute discretion, to protect itself. Liability of the Joint Owners hereunder shall pass to any estate or personal representative of the Joint Owners. This joint account is (with) (without) (strike one) right of survivorship. "Without rights of survivorship" means upon death of any of the Joint Owners and upon liquidation of all positions, ComTrust will separate the joint account into equal shares or such other shares as all Joint Owners shall have notified ComTrust in writing, as nearly as may be possible in the Joint Owners respective names. "With right of survivorship" means upon death of any of the Joint owners. the survivor(s) shall be vested with this joint account, subject to notice and liability as aforesaid. If no instruction is given above, the account shall he deemed joint Tenants with Right of Survivorship.

THIS SECTION MUST BE SIGNED FOR ALL JOINT ACCOUNTS.

x _____        x _____
JOINT OWNER SIGNATURE             JOINT OWNER SIGNATURE

16

B 0042

# **COM**TRUST

## PRIVACY POLICY

**Your Privacy is Our Priority**

ComTrust is committed to safeguarding the personal information that you provide us. This Privacy Policy describes how we **handle** and protect personal information we collect about individuals, such as you, who apply for or receive our products and services. The provisions of this notice apply to former customers as well as our current customers.

**Why and How We Collect Personal Information**

When you apply for or maintain an account with ComTrust, we collect personal information about you for business purposes, such as evaluating your financial needs, processing your requests and transactions, informing you about products and services that may be of interest to you, and providing customer service. The personal information we collect about you includes:

- Information you provide to us on applications and other forms, such as your name, address, date of birth, social security number, occupation, assets, and income;

- information about your transactions with us and with our affiliates;

- information we receive from consumer reporting agencies, such as your credit history and creditworthiness, and other entities not affiliated with ComTrust; and

- information you provide to us to verify your identity, such as a passport, or received from other entities not affiliated with ComTrust.

**How We Protect Personal Information**

We limit access to your personal information to those employees who need to know in order to conduct our business, service your account, and help you accomplish your financial objectives, such as providing you with a broad range of products and services. Our employees are required to maintain and protect the confidentiality of your personal information and must follow established procedures to do so. We maintain physical, electronic, and procedural safeguards to protect your personal information. We do not rent or sell your name or personal information to anyone.

**Sharing Information With Our Affiliates**

We may share personal information described above with our affiliates for business purposes, such as servicing customer accounts and informing customers about new products and services, and as permitted by applicable law. Our affiliates are companies controlled or owned by us, or companies controlling or under common control with our parent company (ComTrust) and us, and include financial service companies, such as dealers, other brokers, futures commission merchants, and advisers.

The information we share with affiliates for marketing purposes may include the information described above, such as name, address and ComTrust account information, but will not include other credit information, such as credit history appearing on a consumer credit report or net worth and income information appearing on applications for our products and services.

**Disclosure to Non-Affiliated Third Parties**

In order to support the financial products and services we provide to you, we may share the personal information described above with third-party service providers and joint marketers not affiliated with us, including:

- financial service institutions (e.g., advisers, dealers, brokers, trust companies and banks) with whom we have joint marketing agreements, such as agreements to market financial services or products that we jointly offer, endorse or sponsor; and

- companies under contract to perform services for us or on our behalf, such as vendors that prepare and mail statements and transaction confirmations or provide data processing, computer software maintenance and development, transaction processing and marketing services.

These companies acting on our behalf are required to keep your personal information confidential.

In addition, we may disclose personal information with non-affiliated companies and regulatory authorities as permitted or required by applicable law. For example, we may disclose personal information to cooperate with regulatory authorities and law enforcement agencies to comply with subpoenas or other official requests, and as necessary to protect our rights or property. Except as described in this privacy policy, we will not use your personal information for any other purpose unless we describe how such information will be used at the time you disclose it to us or we obtain your permission to do so.

**Accessing and Revisiting Your Personal Information**

We endeavor to keep our customer files complete and accurate. We will give you reasonable access to the information we have about you. Most of this information is contained in account statements that you receive from us and applications that you submit to obtain our products and services. We encourage you to review this information and notify us if you believe any information should be corrected or updated. If you have a question or concern about your personal information or this privacy notice, please contact your ComTrust representative.

**Privacy Choices Form – Opt Out**

If you prefer that we limit disclosures of personal information about you, please inform us via US Postal service, that you elect to opt out of our privacy policy procedures. Please send correspondence where you maintain your account(s) as listed on your account statements, along with your account number(s) to: ComTrust, 2999 NE 191 Street Aventura, FL 33180,

Our account records will then indicate the following preferences:
- Limit disclosure of personal information about me to nonaffiliated third parties
- Limit the personal information about me that you share with ComTrust affiliates
- Remove my name from your marketing lists shared with affiliates in non-commodity lines of business.

Please allow approximately 30 days from our receipt of your request for your instructions to become effective. You do not need to notify us, if you have previously instructed ComTrust, in writing, not to share information about you.

1/05

## REG. 190.10 NON-CASH MARGIN DISCLOSURE

THIS STATEMENT IS FURNISHED TO YOU BECAUSE RULE 190.10(C) OF THE COMMODITY FUTURES TRADING COMMISSION REQUIRES IT FOR REASONS OF FAIR NOTICE UNRELATED TO THIS COMPANY'S CURRENT FINANCIAL CONDITION.

1.   YOU SHOULD KNOW THAT IN THE UNLIKELY EVENT OF THIS COMPANY'S BANKRUPTCY, PROPERTY, INCLUDING PROPERTY SPECIFICALLY TRACEABLE TO YOU, WILL BE RETURNED, TRANSFERRED OR DISTRIBUTED TO YOU, OR ON YOUR BEHALF, ONLY TO THE EXTENT OF YOUR PRO RATA SHARE OF ALL PROPERTY AVAILABLE FOR DISTRIBUTION TO CUSTOMERS.

2.   NOTICE CONCERNING THE TERMS FOR THE RETURN OF SPECIFICALLY IDENTIFIABLE PROPERTY WILL BE BY PUBLICATION IN A NEWSPAPER OF GENERAL CIRCULATION.

3.   THE COMMISSION'S REGULATIONS CONCERNING BANKRUPTCIES OF COMMODITY BROKERS CAN BE FOUND AT 17 CODE OF FEDERAL REGULATIONS PART 190.

## AUTHORIZATION TO TRANSFER FUNDS

You are authorized to transfer among my regulated commodity account(s) and any of my other account(s), including foreign secured account(s) and non-regulated account(s), and vice versa, such excess funds as may be required for any reason you deem appropriate in your sole and absolute discretion. Any such transfer shall be in compliance with the Commodity Exchange Act. It is understood that within a reasonable time after making such transfer you will confirm the same to me in writing.

x _____     x _____     x _____
Signature                        Joint Owner Signature, if any        Date

## HEDGE CONFIRMATION

Customer hereby confirms to you that all orders which Customer gives you for the purchase or sale of futures or options contracts for this account(s) will represent bona fide hedges, as defined by the Commodity Futures Trading Commission, against spot positions or commitments in accordance with Section 4a(3) of the Commodity Exchange Act, and with any amendments or CFTC interpretations which may be made in the future. Should Customer place orders for the purchase or sale of futures contracts, which are not hedge transactions, Customer will advise you to that effect. **IF THIS LINE_____ IS INITIALED**, SHOULD A TRUSTEE IN BANKRUPTCY EVER BE APPOINTED IN THE FUTURE FOR YOU. CUSTOMER HEREBY CONFERS UPON SUCH TRUSTEE THE AUTHORITY TO LIQUIDATE OPEN COMMODITY CONTRACTS HELD IN THE BONA FIDE HEDGE ACCOUNT OF CUSTOMER WITHOUT THE PRIOR INSTRUCTIONS OF CUSTOMER AT THAT TIME. IF NO INITIALS APPEAR ON THE LINE ABOVE, NO SUCH AUTHORITY HAS BEEN CONFERRED UPON A TRUSTEE IN BANKRUPTCY. IF ONE IS EVER APPOINTED.

List Commodities to be Hedged: _____

x _____     x _____     x _____
Signature                        Joint Owner Signature, if any        Date

18

# PAYMENT INSTRUCTIONS

If you prefer to send a personal check, cashier's check or bank draft:

## Make the instrument payable to
## ComTrust

If you prefer to wire funds, the instructions are:

Wachovia Bank, N.A. (ABA #063000021)
200 S. Biscayne Blvd.
15th Floor
Miami, FL 33131

FOR FURTHER CREDIT TO **COMTRUST CUSTOMER SEGREGATED ACCOUNT.**

**ACCOUNT # 2000023587511 FOR FURTHER CREDIT**

TO _____
       (YOUR NAME)

Please make sure that the funds you are sending match the title of your new commodity account. The name on your check or the account you are wiring from must be the same as you listed on your account application. This account cannot be funded by third parties or entities not specifically listed in the title of your account.

---

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**What this means to you:**

When you open an account with ComTrust, we will ask you for your name, address, and date of birth, certain identification numbers, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents. In the event that ComTrust cannot obtain proper identity verifying documentation pertaining to the account controller(s), ComTrust will not accept any individual, joint, trust, partnership, or corporate account. In the event that ComTrust cannot obtain proper identity verifying documentation, we will not accept your individual, joint, trust, partnership, or corporate account(s). It is a requirement that we adequately identify the customer(s) in control of every account.

---

The International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001 ("Title III").[1] Section 352 of Title III requires financial institutions, as defined under the Bank Secrecy Act ("BSA"), to implement an anti-money laundering program as of April 24, 2002.

<u>**Please Attach ONE of the Following Documents with Your Application:**</u>

- Photocopy of Your Valid Drivers License
- Photocopy of Your Valid Passport
- Any Valid Government Photo Identification

(All Identifying Documents and Photos MUST Be Legible)

<u>**Secondary Documents to Support Primary Documents:**</u>

- Copy of Residential Utility Bill
- Copy of Your Recent Property Tax Records
- Consent to Employment Verification with Your Employer

(Name & Address MUST Be Legible & Match Address in Account Documents)

<u>**Corporate, Partnership & Trust Documents:**</u>

- Copy of Business Incorporation Records
- Copy of Business Licenses and Partnership Documents
- Copy of Complete Trust Documents

<u>**Non US Persons MUST Include ONE of These Additional Documents:**</u>

- Copy of A Valid Government ID Document
- Copy of A Valid Passport

Please include Individual Identifying Information for <u>Each</u> Account Controller Opening an Individual, Joint, Corporate, Partnership, or Trust Account.

National Futures Association Member
Registered with
Commodity Futures Trading Commission

## NOTIFICATION OF FEES AND CHARGES

Account Name: _____

Introducing Broker:   PROTRADE FUTURES AND OPTIONS

The following charges are the maximum which will be applicable to your trading account with Protrade Futures and Options.

### FUTURES CONTRACTS

Commission per round-turn contract

|                                                                   |          |
| ----------------------------------------------------------------- | -------- |
| (a)  Day trades (up to)                                           | $80.00   |
| (b)  Overnight trades (up to)                                     | $125.00  |
| National Futures Association Fees (Per Round Turn)                | $00.10   |

Other Charges: Transaction fees and Floor brokerage charges, which depending on the commodity purchased are limited to $50.00.

### OPTIONS ON FUTURES AND OPTION GRANTS

Commissions - Charged entry only per round-turn

|                                             |          |
| ------------------------------------------- | -------- |
| (a)  Premium cost $600.00 and over          | $200.00  |
| (b)  Premium cost $599.00 and less          | 30%      |

National Futures Association Fees - Entry                $00.05

National Futures Association Fees · Exit                 $00.05
          (No NFA fees charges on options exercised or expired)

Other charges: Transaction fees and Floor brokerage charges, which depending on the commodity purchased are limited to $50.00.

On futures positions received on exercise of options, regular charges will be made on futures positions as indicated above.

I acknowledge receipt of notification of charges applicable to my account with Protrade Futures and Options.

_____                          _____
Client's Signature                               Client's Signature

**B 0045**



**COMTRUST**

2999 NE 191 STREET SUITE 601, AVENTURA, FL., 33180

## ADDITIONAL RISK DISCLOSURE

Customer Name ___JOHN  BELL_____

Date: _____6/18/05_____

For customers that meet any of the following conditions, please complete this form to document the additional risk disclosure you have passed on to the customer.

1.  Customer is less than 21 years old
2.  Customer is retired
3.  Customer has no previous futures or options trading experience
4.  Customer has an annual income or net worth that is less than $25,000
5.  Customer is unemployed or on a fixed income

____X____ I obtained that the customer read and understood all risk disclosures provided; **and**

____X____ I obtained information that the customer understands he/she can lose more than his/her initial investment if he/she buys or sells futures contracts, including the sale of puts or calls. I also obtained information that the customer understands that the risk factor in futures is high and that he/she is using genuine "risk funds."

_____

Signature of Account Representative

*RECD JUN 22 2005*

**B 0047**