Defendant's
Exhibit C

## BEFORE THE ARBITRATION COMMITTEE
## OF THE NATIONAL FUTURES ASSOCIATION

| | | |
|---|---|---|
| JOHN T. BELL, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | |
| PROTRADE FUTURES & OPTIONS, | ) | |
| COMTRUST, INC., MITCHELL | ) | No. 06 - ARB -61 |
| BRAD GOLDBERG, | ) | |
| CORPORATE COMMODITIES INC., | ) | |
| and ALARON TRADING | ) | |
| CORPORATION, | ) | |
| | ) | |
| Respondents. | ) | |

### AMENDED STATEMENT OF CLAIM

For his Amended Statement of Claim against Respondents, Claimant John T. Bell,

by his attorneys, James L. Kopecky and Howard B. Prossnitz, states:

### Introduction

1.  What happened here is inexcusable.  The facts here are the subject of a recently

filed NFA Complaint, Case No. 06-BCC-022, which includes as Respondents Mitchell

Goldberg, ProTrade Futures & Options and Corporate Commodities Inc.  (A copy of the

NFA complaint is attached hereto as Exhibit A.)

2.   No reputable clearing firm would have stood by and done nothing as the

retirement portfolio of an 80 year old man was decimated by the reckless trading

perpetrated by individuals previously suspended from the industry.  The numbers speak

for themselves.  Respondents took $793,520 from Claimant Bell.  He was charged 72.57%

1

of that amount or $575,932 in fees and commissions. The remaining $217,663 was lost in reckless trading, the only purpose of which was to generate fees and commissions. The ending account balance after the $793,520 was taken from Claimant was minus $75! (A summary of the trading is attached as Exhibit B.)

3.    This is a failure to supervise and fraud claim that is brought by 80 year old Retiree John Bell against Respondents. Some of the Respondents have been previously suspended from NFA Membership or subject to CFTC regulatory actions for prior abuses. Mitchell Brad Goldberg, the individual who solicited money from Claimant, was barred from NFA membership for four years starting on August 20,.1999. Further, the Business Conduct Committee of the NFA permanently barred Goldberg from acting as a principal or supervisor of any NFA member. As noted above, the BCC has now filed a new case concerning the matters at hand.

4. Any reasonably diligent Futures Commission Merchant (FCM) or clearing firm would have caught on to what occurred in this account. There were numerous red flags which were ignored by clearing firm ComTrust Inc. For instance, it ignored the NFA records on Goldberg. Further, at the same time that the introducing broker Protrade was having trades cleared at ComTrust, Protrade also entered into a Guarantee Agreement with another FCM named. As pointed out by Alaron, in its response to the original claim, a "simple check on the NFA's web site would have shown that Protrade was guaranteed by Alaron. That knowledge would have kept any reputable firm in the futures business from accepting Mr. Bell's account." Alaron itself can not believe what ComTrust did and failed

2

to do.

## Parties

5.   Claimant John T. Bell is an individual living at 4 N 009 Thornapple Road, St. Charles, IL 60174.

6. ProTrade Futures and Options has NFA ID 0350004. It is an introducing broker. Its address is 2999 NE 191st Street, Suite 608, Aventura, Florida 33180.

7. In a suite that is apparently next door to ProTrade's office is ComTrust Inc.  It acted as supposedly independent clearing firm.  ComTrust is located at the same street address as ProTrade, ie. 2999 NE 191st Street, Aventura, FL 33180 with Suite Number 601 as opposed to Suite 608 for ProTrade.   ComTrust has NFA ID 0346967 and is the subject of two CFTC reparations cases, Nos. 06 R 038 and 06 R 014.

8. Mitchell Goldberg had his Associated Person status withdrawn as of August 10, 2005.  His address is 4000 Hollywood Boulevard, Suite 370 N, Hollywood, Florida, 33021.

9.   Corporate Commodities Inc.  is located at 9050 Pines Boulevard, Suite 415, Pembroke Pines, Florida 33024.  Corporate Commodities Inc. has NFA ID 357348.

10.  Alaron Trading Corporation had a Guaranteed Introducing Broker Agreement with Protrade.  Alaron is located at 822 West Washington Boulevard, Chicago, IL 60607. Alaron has NFA ID number 0223154.   Alaron has been fined $200,000 by the NFA for associating with unregistered individuals and doing business with non NFA members. See NFA BCC00004.  In addition, the Chicago Mercantile Exchange fined Alaron $100,000 in

3

Case No. CME 03CH0301.    Alaron has been named as a respondent in fifty CFTC reparations cases.

## Statement of Facts

11.    In June 2005, Respondent Goldberg solicited Claimant to invest in Florida orange juice futures.    Goldberg was an associated person of ProTrade at the time. Goldberg had Claimant open an account with clearing firm ComTrust on June 13, 2005.

12. Goldberg and ComTrust knew that Claimant was 79 years old, was retired, had an annual income of $25,000, had a total retirement account of about $ 1 million, and had no prior experience in commodity futures or commodity options. (See Exhibit C.) Options and futures trading was clearly unsuitable for him.

13.    Without Claimant's approval or authorization, Goldberg started trading in bonds, crude oil, cocoa, cotton and natural gas futures.    Goldberg simultaneously bought and sold large numbers of call put options.  He charged excessive commissions.  Most of the options purchased expired worthless.  Nothing was done to manage the risk of the trading.  There was no coherent trading strategy.    The only apparent purpose of the trading was to generate as much as possible in commissions and fees.

14.    The introducing broker changed to Corporate Commodities Inc. as of the time of an August 29, 2005 trade.    In or about July 2005, ProTrade had transferred all of its customers and the majority of its employees and assets to Corporate Commodities Inc.  As noted in the NFA Complaint in BCC Case. No. 06 BCC 022, the individuals involved with ProTrade and Corporate Commodities Inc. have an extensive history of working for firms

4

that have been charged and sanctioned for sales fraud.

15.    Goldberg switched his AP registration from ProTrade to Corporate Commodities Inc. in early August 2005. By February 9, 2006, Claimant's account balance was negative $75.  Close to $800,000 was lost.

16.  It was on July 8, 2005 that ProTrade entered into a Guaranteed Introducing Broker Agreement with Alaron.    Yet, even after this Agreement was entered into, ComTrust still cleared trades for ProTrade that went into Claimant's account.

17.  After he had lost close to $800,000, ComTrust tried to induce Claimant to release all his claims for $10,000.  (Exhibit D.)

## Count I

## Breach of Customer Agreement

18.  Claimant entered into a Customer Agreement with ComTrust.

19.  Paragraph 2 of the "Trader Agreement"attached by Comtrust to its Answer states (Exhibit E hereto) (ComTrust did not attach a complete agreement signed by Bell so it still must be verified that it attached the correct Agreement):

> All transactions for my account(s) shall be subject to all applicable federal, state law and self-regulatory agencies including the constitution, rules and customs, as the same may be constituted from time to time, of the exchanges, market or place (and the clearing associations, if any) where executed or, if different, your house rules.  This paragraph is solely for your protection and your failure to comply with any such regulations, constitutions. (sic) rules, and/or customs shall not be a breach of this Agreement and shall not relieve me of any of my obligations under this Agreement.

20.  The first sentence of paragraph 2 of the Agreement requires ComTrust to

5

comply with all applicable rules of the NFA.  The second sentence is unenforceable to the extent that it is contrary to public policy.  ComTrust can not simultaneously put in its Customer Agreement that it will follow NFA Rules and then say failure to follow them is not a breach of the contract.

21.  The transactions effected in Bells' account were in violation of numerous CEA and NFA anti-fraud provisions and thus in breach of the customer agreement with ComTrust.

22.  Claimant was damaged by said breach in the amount of $793,595.

23.  He has demanded return of the money and Respondents have refused to return it.

WHEREFORE, Claimant respectfully prays for an award in arbitration in his favor and against Respondents, jointly and severally,  awarding damages of $793,595, including a return of all excess commissions and mark ups or other compensation, wrongful profits of Respondents, damages for the decline in account value, lost opportunity cost damages, punitive damages, plus interest, the costs of the action, filing fees, and for such further and other relief as the arbitrators deem appropriate.

## Count II

## Breach of Fiduciary Duty

24.  Paragraphs 1 to 23 are realleged and incorporated herein by reference.

25.  Claimant  brings this count against Respondents for breaches of fiduciary duty. Claimant placed his trust and confidence in Respondents and their representatives and

6

agents. He entrusted money to Respondents so that a fiduciary duty was created between them and him. A principal agent relationship with Claimant developed with Respondents whereby Respondents owed the utmost in fiduciary duties to Claimant. Since Respondents had *de facto* discretionary control over 's Claimant's money, picked all the trades, and selected the trades, they owed Claimant the utmost in fiduciary duties.

26. Respondents owed a fiduciary duty to Claimant to see that Claimant's account was properly and reasonably handled.

27. Further, Respondents were obligated to deal competently, fairly and lawfully with Claimant by NFA rules.

28. In breach of these fiduciary obligations, excessive and unsuitable risky positions were taken and large amounts were immediately diverted for fees and commissions. The total commissions and fees were excessive. All this was in breach of Respondents' fiduciary duties and Claimant has been damaged in the amount of $793,595.

WHEREFORE, Claimant respectfully prays for an award in arbitration in his favor and against Respondents, jointly and severally, awarding damages of $793,595, including a return of all excess commissions and mark ups or other compensation, wrongful profits of Respondents damages for the decline in account value, lost opportunity cost damages, punitive damages, plus interest, the costs of the action, filing fees, and for such further and other relief as the arbitrators deem appropriate.

## Count III

## Negligent Misrepresentation

7

29. Paragraphs 1 to 28 above are realleged and incorporated herein by reference.

30. Respondents owed a duty to Claimant to truthfully state the risks associated with commodity trading, they owed a duty to make accurate representations concerning the trading and to conduct themselves in accordance with NFA Rules. They had a duty to use reasonable care in the representations that were made to Claimant.

31. In breach of those duties, Respondents and its agents engaged in the aforesaid material omissions and negligent misrepresentations such as fraudulently representing that only orange juice contracts would be traded and that such contracts were suitable for Claimant.

32. Claimant reasonably relied on those statements to his detriment which proximately caused his loss of $793,595.

33. Under the doctrine of respondeat superior (and the Guarantee Agreement of Alaron), Respondent clearing firms are liable for the negligent misrepresentations of their agent Goldberg.

WHEREFORE, Claimant respectfully prays for an award in arbitration in his favor and against Respondents, jointly and severally, awarding damages of $793,595, including a return of all excess commissions and mark ups or other compensation, wrongful profits of Respondents, damages for the decline in account value, lost opportunity cost damages, punitive damages, plus interest, the costs of the action, filing fees, and for such further and other relief as the arbitrators deem appropriate.

### Count IV

8

## Negligence - Failure to Supervise

34. Claimant repeats and realleges paragraphs 1 to 33.

35. Respondents had a duty to handle Claimant's account with reasonable care and the clearing firms had a duty to supervise their agents.

36. In breach of those duties, Respondents allowed about 75% of Claimant's money to be diverted for fees and commissions.

37. Claimant has been damaged due to the negligence of Respondents.

WHEREFORE, Claimant respectfully prays for an award in arbitration in his favor and against Respondents, jointly and severally, awarding damages of $793,595, including a return of all excess commissions and mark ups or other compensation, wrongful profits of Respondents, damages for the decline in account value, lost opportunity cost damages, punitive damages, plus interest, the costs of the action, filing fees, and for such further and other relief as the arbitrators deem appropriate.

## Count V

### Fraud

38. Claimant repeats and realleges paragraphs 1 to 37 above.

39. The statements of Respondents's agent Goldberg to Claimant prior to his initial investment in June 2005 as to how trades would be placed and the suitability of them were fraudulent and were intentionally made to induce Claimant to make his investment. Goldberg knew they were fraudulent at the time they were made and they were made to induce Claimant to invest. It was a fraudulent omission not to disclose the regulatory

9

history of Respondents and the fact that most of ProTrade's clients lost money.

40. Claimant reasonably relied on these fraudulent statements to his detriment which proximately caused his loss of $793,595.

41. Under the doctrine of respondeat superior, Respondent clearing firms are liable for the acts of Goldberg.

42. Further, ComTrust aided and abetted in the fraud by providing substantial assistance to the introducing brokers and their agents through its knowing participation and its collection of excessive fees and commissions.

WHEREFORE, Claimant respectfully prays for an award in arbitration in his favor and against Respondents, jointly and severally, awarding damages of $793,595, including a return of all excess commissions and mark ups or other compensation, wrongful profits of Respondents, damages for the decline in account value, lost opportunity cost damages, punitive damages, plus interest, the costs of the action, filing fees, and for such further and other relief as the arbitrators deem appropriate.

**Claimant**

By _____

**James L. Kopecky, P.C.**
**312 N. Clark Street**
**Suite 2200**
**Chicago, IL 60610**
**312 527-3966**
**312 527-3968 fax**
**jim@jlkopecky.com**

10

Howard B. Prossnitz, Esq.
Law Offices of Howard Prossnitz
Suite 2670
200 West Madison Street
Chicago, Illinois 60606
(312) 960-1800
(312) 960-1804 (Fax)
howard@prossnitzlaw.com
Dated: September 14, 2006

## **Certificate of Service**

I, Howard B. Prossnitz, an attorney, certify that I served a copy of the foregoing document by U.S. mail on this 14th day of September 2006 on the persons listed on the attached Service List.

## Service List

James Kopecky
321 N. Clark Street
Suite 2200
Chicago, IL 60610

Michele Labruce
1592 Shoreline Way
Hollywood, FL 33019

Mitchell Goldberg
9451 NW 8th Street
Pembroke Pines, FL 33024

Gary Sinclair
2043 N. Mohawk Street
Chicago, IL 60614

James Rynes
Alaron Trading Corp.
822 West Washington Blvd.
Chicago, IL 60607

**BEFORE THE ARBITRATION COMMITTEE**
**OF THE NATIONAL FUTURES ASSOCIATION**

| | | |
|---|---|---|
| JOHN T. BELL, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | No. 06 – ARB -61 |
| | ) | |
| PROTRADE FUTURES & OPTIONS, | ) | |
| COMTRUST, INC., MITCHELL | ) | |
| BRAD GOLDBERG, and | ) | |
| CORPORATE COMMODITIES INC. | ) | |
| | ) | |
| Respondents. | ) | |

### Motion for Leave to File Amended Statement of Claim

Claimant moves for leave to file the attached Amended Statement of Claim. This case is recently filed and Respondents will not be prejudiced. A number of Respondents have not answered yet. Further, the Amended Statement of Claim refers to a recent new filing by the NFA's BCC concerning the matters at hand.

Claimant

By _____

James L. Kopecky, P.C.
312 N. Clark Street
Suite 2200
Chicago, IL 60610
312 527-3966
312 527-3968 fax
jim@jlkopecky.com

1

**Howard B. Prossnitz, Esq.**
**Law Offices of Howard Prossnitz**
**Suite 2670**
**200 West Madison Street**
**Chicago, Illinois 60606**
**(312) 960-1800**
**(312) 960-1804 (Fax)**
**howard@prossnitzlaw.com**
**Dated: September 14, 2006**

## Certificate of Service

I, Howard B. Prossnitz, an attorney, certify that I served a copy of the foregoing document by U.S. mail on this 14th day of September 2006 on the persons listed on the attached Service List.

2