Defendant's Exhibit G



# Legal and Procedural Issues

## For NFA Arbitrators



## Suitability

Neither the Commodity Exchange Act nor CFTC regulations impose suitability requirements on the futures industry.

NFA has adopted a "know your customer" rule instead of a suitability rule. NFA Compliance Rule 2-30 requires that futures commission merchants (FCM), introducing brokers (IB), commodity trading advisors (CTA) and their associated persons (AP) obtain certain information from the customer prior to his opening an account. Specifically, the rule requires that the NFA Member FCM, IB or CTA, or Associate (AP) obtain:

1) the customer's true name and address and his or her principal occupation or business;

2) the customer's current estimated annual income and net worth;

3) the customer's approximate age; and

4) an indication of the customer's previous investment and futures trading experience.

Once this information is obtained, the rule requires the broker to provide each new customer with risk disclosure which includes, *at a minimum*, the risk disclosure statements required by CFTC regulations. The rule clearly recognizes, however, that the information obtained from some customers will show that they need a greater explanation of the risks involved in futures trading and that for some customers the only adequate risk disclosure is to tell them that futures trading is too risky for them. Once that has been done, each customer is free to make the decision whether to trade futures or commodity options. The rule does not require the customer to inform the broker of material changes in his financial condition after the account is opened and the firm has no duty to monitor a customer's financial condition.

3

An NFA Member can be held by the Business Conduct Committee to be in violation of NFA Compliance Rule 2-30 without a finding of specific intent. However, a number of cases have held that a violation of the rules of a self-regulatory organization such as NFA does not create a private cause of action in the absence of a finding of fraud although it may demonstrate negligence or failure to supervise.

See *Phacelli v. ContiCommodity Services*, [1986-1987 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 23,250 (CFTC 1986); *Jensen v. Shearson Hayden Stone*, [1980-1982 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,324 (CFTC 1981); *Merrill Lynch, Pierce, Fenner & Smith v. Goldman*, 593 F. 2d 129 (8th Cir. 1979), *cert. denied*, 444 U. S. 838 (1979).

## Misrepresentations About and Failure to Disclose Risk

The anti-fraud provision of Section 4b of the Commodity Exchange Act (7 U.S.C.§ 6b) prohibits misrepresentation and non-disclosure of or downplaying of risks involved in futures and options transactions. CFTC regulations require most commodity professionals to provide prescribed risk disclosure documents to their customers. However, merely providing the risk disclosure document is not sufficient if oral representations are made that are inconsistent with or downplay the risk disclosure document or if other material facts involving the transaction are not disclosed.

See *Miller v. Kirch*, [1980-1982 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,488 (CFTC 1982); *Gordon v. Shearson Hayden Stone, Inc.*, [1980-1982 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,016 (CFTC 1980); CFTC Regulations §§ 1.55, 4.21, 4.31 and 33.7 (17 C.F.R. §§ 1.55, 4.21, 4.31 and 33.7).

4

## Clearing Firm Responsibility for Introduced Accounts

Section 2(a)(1)(A) of the Commodity Exchange Act provides *respondeat superior* and general principal/agent standards for imposing liability on employers and principals for acts of their employees or agents. Futures case law has held that the issue of whether one entity is acting as an agent for another turns on an overall assessment of the totality of the circumstances in each case. This case-by-case approach to agency issues under the Act emphasizes that if it can be shown that an IB is a de facto branch office of an FCM, the FCM may be deemed to be primarily liable for a failure to supervise that IB as well as vicariously liable for the acts of the IB.

Issues of FCM liability may arise in connection with two types of IBs:

1) independent IBs which maintain adjusted net capital equal to or in excess of the greater of $30,000 or a specific dollar amount for each office operated by the IB or for each AP sponsored by the IB; or

2) guaranteed IBs which, rather than maintain adjusted net capital, operate pursuant to a valid guarantee agreement.

The fact that an IB is "independent" does not mean that it cannot be held to be an agent of an FCM. Rather, the arbitrator must look at all of the facts to determine whether there is an agency relationship.

15

Certain factors are not sufficient to establish that an IB is an agent of an FCM. For example, an agency relationship is not established if the IB and the FCM work as "independent business entities" and the only services the FCM provides to the IB are "back office" services (e.g., calculating margin and net equity and collecting margin) and sending confirmation, purchase and sale, and monthly statements directly to the customers that had been "introduced" by the IB to the carrying FCM.

With respect to guaranteed IBs, the guarantee agreement between the FCM and the IB provides that the FCM will be jointly and severally liable to the customers of that IB for the IB's obligations under the Act or any CFTC regulations. When determining FCM liability for the actions of the FCM's guaranteed IBs, the arbitrators must resolve only two issues:

1) whether the alleged conduct of the guaranteed IB involved an obligation of the IB under the Act or any CFTC regulations; and

2) whether the conduct occurred while the guarantee agreement was in effect.

If the answer to both questions is "yes," the FCM is liable.

See *Reed v. Sage Group, Inc.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 23,943 (CFTC 1987); *Bogard v. Abraham-Rietz & Co.*, [1984-1986 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 22,273 (CFTC 1984).

16